(COMMON LAW.)

## DORR v. The PACIFIC INSURANCE COMPANY.

Under a policy containing the following clause : " And lastly, it is agreed, that if the above vessel, upon a regular survey, should be thereby declared unseaworthy, by reason of her being unsound or rotten, then the assurers shall not be bound to pay their subscription on this policy," and it was found by the jury that the vessel was seaworthy at the time of the commencement of the risk, and when she sailed on the voyage insured : *Held*, that proof, by a regular survey, of unsoundness at any subsequent period of the voyage, discharged the underwriters.

Dorr
v.
The Pacific
Insurance
Company.

An exemplification of a condemnation of the vessel in a foreign Court of Vice Admiralty, reciting the certificate of surveyors, that the vessel was unworthy of being repaired, and unsafe and unfit ever to go to sea again, and produced in evidence by the insured to prove the loss, is " a regular survey," in the language of the above clause. But the survey must correspond with the contract, and if the vessel be declared unseaworthy for any additional cause, besides being " unsound or rotten," it is not conclusive evidence of unseaworthiness.

ERROR to the Circuit Court for the Southern District of New-York.

This was an action of assumpsit upon a policy of insurance subscribed by the defendants on the 8th September, 1819, whereby they insured the ship Holofern, belonging to the plaintiff, and valued at $6,125, on a voyage from Wiscasset in Maine to Havana in the West Indies. The policy contained the following clause:

" And lastly, it is agreed, that if the above vessel, upon a regular survey, should be thereby declared unseaworthy, by reason of her being unsound or rotten, or incapable of prosecuting her voyage on account of her being unsound or rotten, then the assurers shall not be bound to pay their subscription on this policy."

A special verdict was found by the jury, stating that the ship Holofern was the property of the plaintiff, and sailed on the voyage, insured, on the 9th September, 1819, and in the course of the voyage she met with violent gales, in consequence of which she sprung aleak, and after attempting, in vain, to pursue her voyage, was compelled to bear away for New-Providence, and arrived in the harbour she grounded, from an insufficient depth of water, but was got off,

and a regular survey was had upon her by surveyors appointed by the Vice Admiralty Court at said Nassau, and upon such survey the said ship was condemned in the manner stated in the sentence of condemnation, of which the following is a copy:

*Bahama Islands,* ⎱ *IN THE INSTANCE COURT OF VICE*
*New-Providence.* ⎰ *ADMIRALTY.*

SHIP HOLOFERN, JOHN S. THOMPSON, MASTER.

*In the name of God, Amen!*

L. S. AT a Court of Vice Admiralty held the twenty-sixth day of October, one thousand eight hundred and nineteen, before me, the Worshipful Theodore George Alexander, Esquire, Judge and Commissary of the said Court, John S. Thompson, the master of the American ship Holofern, by William Kerr and Henry M. Williams, his Proctor in that behalf duly appointed, came into Court, and alleged, that on the twentieth day of this instant month of October, he did exhibit a libel or information against the said ship, when he gave the Court to understand and be informed, that on the eighth day of October instant, the said John S. Thompson, by his Proctor aforesaid, did make humble petition to the Court, stating, that on the ninth day of September last past, he sailed in and with the said ship from Wiscasset, in the State of Massachusetts, bound on a voyage to Havana, in the island of Cuba, with a cargo of lumber, spars, oars, anchors, and coals, and on the eighteenth day of the same month, in latitude 28° 39, by observation, he experienced a very violent gale of of wind, during which the said ship sprung aleak:

that all hands were, in consequence thereof, employ-ed at the pumps until the twenty-fourth of the same month, when he had proceeded on his voyage as far as the Bahama Bank: that at that time the people, being nearly exhausted by incessant labour at the pumps, they insisted on bearing up for New-Providence, which he thought it prudent to do as the wind was then westerly, and a-head for the Havana: that he accordingly proceeded for New-Providence with the said ship, and arrived in the harbour of Nassau on the twenty-sixth day of the said month of September: that since the arrival of the said ship in the said port, a part of her cargo had been landed, and, upon his inspecting and examining into her condition, he conceived her not only unfit to proceed to sea again in her present state, but altogether unworthy of being repaired. And he therefore prayed that a warrant might forthwith issue out of this honourable Court, according to law and the usage and practice of the said Court in such cases, to cause the said ship to be surveyed and examined by persons duly competent in that behalf, who might report as to the true state and condition of the said ship. And thereupon a warrant did issue accordingly, directed to William Gibson and John Russell, of the island of New-Providence, shipwrights, and Samuel Clutsam, of the same place, late a master mariner, who did certify, on the nineteenth day of October instant, on oath, That on the eighth day of October instant they repaired on board the said American ship Holofern, John S. Thompson, master, riding at anchor in the harbour of Nassau, but not finding the said ship more than half

discharged, they could not then properly proceed to examine into her state and condition. And they did further certify, that on the sixteenth day of October instant, the said ship being then nearly discharged, they were enabled to inspect and examine into her state and condition, and having done so minutely and diligently, they found her to be in a very leaky state, and having at the same time caused a part of her inside ceiling to be stripped off, they discovered the said ship to be in a very decayed condition. And they did further certify, that they were of opinion, that the said ship was altogether unworthy of being repaired, and that she ought to be condemned as being unsafe and unfit ever to go to sea again.

Wherefore the said William Kerr and Henry M. Williams, as the lawful Proctor aforesaid, prayed me, the Worshipful Theodore George Alexander, Esquire, Judge and Commissary as aforesaid, that right and justice might be duly administered to them and their party in the premises; that the said ship Holofern might, by the decree of this honourable Court, be condemned as unfit for further service, and together with boats, tackle, apparel, and furniture, be ordered to be sold by the Marshal of this Court, and the proceeds thereof might be paid to the said John S. Thompson, or his agent, for the use of the owners and proprietors and insurers thereof, and that such other proceedings might be had and done in the premises as should be agreeable to law, and the style and practice of the Admiralty. And whereas, the usual and proper monition hath been issued and returned in this cause, and no person having appeared

*Margin note:*

1822.

Dorr
v.
The Pacific
Insurance
Company.

1822.

Dorr
v.
The Pacific
Insurance
Company.

to show cause why the said ship should not be condemned agreeable to the prayer of the said master, therefore, I, the said Theodore George Alexander, Esquire, Judge and Commissary as aforesaid, having considered the whole proceedings had and done before me in this cause, do hereby adjudge, pronounce, and declare the said ship unfit for the further service, and as such do condemn the said ship, and direct that the same, together with her boats, tackle, apparel, and furniture, be forthwith sold by the Marshal of the said Court, and the proceeds paid to the said John S. Thompson, or his agents, for and upon account and use of the owner, proprietors, and insurers, thereof. In testimony whereof, I, the said Theodore George Alexander, Esquire, Judge and Commissary as aforesaid, have hereunto set my hand and caused the seal of the said Court to be affixed, at Nassau, the twenty-sixth day of October, in the year of our Lord one thousand eight hundred and nineteen.

(Signed.)   THEO. G. ALEXANDER, *J. C. V. A.*

*Bahama Islands,*     *IN THE VICE ADMIRALTY INSTANCE*
*New-Providence.*            *COURT.*

In the case of the American ship Holofern, John S. Thompson, master, I certify the foregoing paper writing to be a true copy of the Decree made and given in the above cause.

In testimony whereof, I have hereunto set my hand, and caused the seal of the said Court to be affixed, this seventeenth day of July, in the year of

our Lord one thousand eight hundred and twenty.

ALEXANDER M. EDWARDS,

*Dep. Reg. C. V. A.*

1822.

Dorr
v.
The Pacific
Insurance
Company.

The special verdict also found, that the said condemnation was obtained through the agency of John and George K. Storr, a mercantile house at New-Providence, to whom the Holofern was consigned by her captain, and that the said John and George K. Storr, (though ignorant of the insurance in this case,) were the general agents of the defendants to manage their concerns at New-Providence.

The special verdict further stated, that in consequence of this condemnation the ship was sold, and the voyage lost: that the plaintiff exhibited to the defendants the requisite preliminary proofs of interest and loss, more than thirty days before bringing the action.

That the said ship was seaworthy at the time of the commencement of the said risk, and when she sailed upon the voyage insured; and assessed the plaintiff's damages, in case he was entitled to recover, at $6,625 20.

The record also contained a bill of exceptions, by which it appeared, that the plaintiff produced a copy of the record of the said Vice Admiralty Court, as preliminary proof of loss, and the judge charged the jury that the said copy of the said sentence of condemnation having been produced in evidence by the counsel for the plaintiff, as preliminary proof of loss,

was, as against the plaintiff, sufficient evidence of a regular survey, in the absence of any proof to the contrary:—to which opinion the plaintiff's counsel excepted.

It further appeared, that the said Admiralty proceedings at New-Providence were conducted under the directions of Messrs. John and George K. Storrs, a mercantile firm of that place, under whose charge the captain had placed the Holofern. The Messrs. Storrs were authorized by a general power of attorney, set out in the bill of exceptions, to attend to the interests of the defendants at New-Providence, but there was no evidence that they were apprised that the defendants had insured the Holofern.

The counsel for the plaintiff, for the purpose of proving that the said condemnation had been fraudulently obtained, inquired of the captain of the Holofern, who was a witness in the cause, whether he ever made the statement represented by the said sentence of condemnation, to have been made in his petition to the said Court, to wit, that he conceived that the Holofern was not only incapable to proceed to sea in her then state, but altogether unworthy of being repaired? This question was overruled by the judge.

The same witness was then asked, by the plaintiff's counsel, whether the inside ceiling of the said ship was ever stripped off, as stated in the said sentence of condemnation, and whether she was not in such a situation, by reason of the position of such parts of her cargo and ballast as remained on board, and of the water in the hold, that it could not have

been stripped off as there stated? This question was in like manner overruled.

The witness was then asked, whether he had not been informed by Gibson, one of the surveyors, that the Holofern was not condemned on account of her being rotten, but because she could not be hove down to be repared, for want of conveniences for that purpose at New-Providence? This question was also overruled.

The same witness was then asked, whether he did not, by directions from the Messrs. Storrs, after the sale of the ship and cargo, (at which sale the witness was not present,) call upon the said Gibson, as having purchased part of the said cargo at auction, for the price thereof, and receive the same? The judge having ascertained, by inquiry of the plaintiff's counsel, that they had been in possession of the account sales of the said cargo, signed by the Messrs. Storrs, but that the same had been sent to Maine, to recover a loss upon a policy on the cargo subscribed there, overruled the said question.

The plaintiff's counsel excepted to the several decisions overruling the said questions.

Mr. *H. D. Sedgwick*, for the plaintiff in error, argued (1) that the sentence of condemnation, of the Court of Vice Admiralty at New-Providence, and the survey stated therein, being *subsequent* to the commencement of the risk, could only prove the unsea worthiness of the ship, *at the time of the survey.*

*a* Marine Ins. Co. v. Wilson, 3 *Cranch*, 187.

1822.

Dorr
v.
The Pacific
Insurance
Company.

*March 6th.*

The clause in question has always been considered, both in arguments at the bar, and in the decision of the Courts, not as varying the reciprocal rights and duties of the parties, but simply as a stipulation *in relation to evidence;* nothing farther is required of the insured than to furnish a competent vessel at the inception of the voyage, and all subsequent accidents and losses are at the risk of the insurer, and of consequence, it was held in the case cited, that a report of surveyors in regard to the state of the ship on the 16th of October, was not competent, or if competent, not conclusive evidence of her condition, on the 9th September preceding. It had been suggested, that the decision in the *Marine Insurance Company* v. *Wilson* was founded on the particular state of the pleadings; but there was no intimation in that case, that the defence would have been available in any other form, and the case was decided for the plaintiff on the ground that it did not appear by the record that any evidence was offered to prove the vessel unsound on the 24th October, except the report of the surveyors, which was made on the 26th November, and that there was no parol testimony to explain the report, or apply it to the time of the commencement of the risk.

2. It is necessary for the protection of the insurers, that it should appear by the survey, that the rottenness of the ship was the *exclusive* cause of her condemnation. Such is the clear result of all the cases.[a]

a Guamiguez v. Coxe, 1 *Bin.* 592.   Watson et al. v. Ins. Co.

Now here it does not appear that the ship was irreparable from unsoundness *solely*. On the contrary, it appears by the special verdict, that she " met with violent gales, *in consequence of which* she sprang a leak." The Holofern is stated by the survey to have been in a leaky state; the cause of that leakiness is not stated, but it is to be referred to the leak sprung in consequence of the perils insured against. The rule has been laid down more strongly than we contend for. " Springing a leak *is* a peril insured against, and any accident which can be traced to the springing of a leak, in a calm or in a storm, and after a long or short absence from port."[a]

The condemnation proceeded as well on the ground of the leakiness of the vessel, as of her decayed condition ; and it is sufficient for the plaintiff, if it appear that the leakiness was not, of necessity, to be solely ascribed to the decay. In this case, the language of the record may fairly be considered as amounting to no more than this : " By the extraordinary violence of the gale, the ship was so sprung, and started in her timbers and planks, as to be in a very leaky state, and to require a thorough repair to be made tight. She was decayed, as all ships are, and not so sound a vessel as to render extensive repairs expedient."

It appears, from *the whole record,* that there was

of N. A. *Condy's Marsh.* 169. note b. Amroyd v. Union Ins. Co. 2. *Bin.* 394. Stienmitz v, United Ins. Co. 2 *Ser. & Rawle,* 293.

*a* Patrick v. Hallett, 3 *Johns. Cas.* 76.

Dorr
v.
The Pacific
Insurance
Company.

1822

no proof that a regular survey had been had on the ship.

The bill of exceptions is part of the record; and if necessary, the special verdict may be amended by it. As a general rule, all errors and defects may be amended when there is any thing by which the amendment can be made. The provision for amendments made by the law of the United States, is much more liberal than any of the English statutes of Jeoffails.[a] The practice of amending verdicts is familiar. It is often done from the notes of the judge, at the term subsequent to the trial, and such notes are certainly much less authentic than a bill of exceptions, settled at the time, and sealed by the judge as making part of the record.

Although the fact of a survey having been had on the Holofern, is directly stated in the special verdict; we have a right, therefore, to resort to the bill of exceptions, to see upon what evidence the fact is so stated.

It is obvious to remark a very striking difference between this case and *every other* to be found in the books, in which the application of this clause in a policy of insurance, was brought in question. In every other case *the survey itself*, or an authenticated copy, was produced in evidence, and is set out in the case. Here no survey was produced; no copy proved, nor even an extract given from the survey. What the survey was, or whether it ever had any existence as a written document, does not appear. All the evidence we have of it, is *an account* or sum-

[a] Judiciary Act, 1789, c. 20 s. 32.

mary, (and probably an imperfect one,) which is contained in the reco'd of the Vice Admiralty Court, and it is apparent from this record, that the words of the surveyors are not given. If there ever was any paper in writing signed by the surveyors, it has been wholly re-modelled. All the tenses of the verbs are changed.

The defendants should have produced the survey itself, or, at least, have distinctly and unequivocally required the plaintiff to produce it. They did neither.

Upon what evidence then do the defendants rely to substantiate the fact in question? Solely on the record of the Court of Vice Admiralty at New-Providence.

It is first to be observed that the clause in question in the New-York policies (of which this is one) differs in one respect from the correspondent clause in the policies of the cities south of New-York, upon which adjudications have been had. In the southern policies, the phraseology is such as might seem to point to judicial proceedings; here the words are, " if the above vessel upon a regular survey should be *thereby declared*, &c. ;" distinctly placing the bar on the *survey* alone.

The great question between the parties is, whether the decree in the Vice Admiralty Court is *conclusive* evidence of a regular survey; for if not conclusive, the verdict in our favour will entitle us to judgment.

It will scarcely be pretended, that independently of the stipulation in the policy, the record of the Vice Admiralty Court, or even the survey itself, however au-

thenticated, would be conclusive evidence, or *any* evidence of the unseaworthiness of the vessel.

It has been settled too often, and upon too solid grounds, that admiralty surveys, and the decrees of Courts thereon, are *ex parte* proceedings, and wholly inadmissible as evidence between the insurer and insured, to make it necessary to do any thing more than refer to the authorities.[a]

The precise reason for introducing the clause in question into the policy, was because these surveys were not evidence antecedently. It is evident, therefore, that if the record in question have any validity, either as evidence of a survey or otherwise, such validity must be acquired wholly from the stipulation in the policy, without which the survey itself, and the adjudication of the Court thereon (however efficacious as a foundation of title in a *bona fide* purchaser) would, as between the parties to this suit, be mere nullities.

What then is the stipulation which is now pressed against us? If we allow it all the effect contended for on the other side, it is no more than this—a regular survey shall be taken as conclusive proof of unseaworthiness. The stipulation regards the *fact*, not the *manner in which it is to be proved*—there is no stipulation as to evidence.

The just construction of the contract requires that there should be a written survey, under the hands of the surveyor. As has been observed, such a survey

a Abbott v. Seabor, 3 *Johns. Cas.* 39. Wright v. Barnard, 2 *Esp. N. P. Cas.* 701. S. C. *Park. on Ins.* 548. 6th *Lon. Ed.* Saltus v. Commercial Ins. Co., 16 *Johns. Rep.* 487.

did exist, and was proved in every case reported in the books. Now, we insist that our stipulation, which merely makes this document evidence, does not in any degree dispense with the ordinary and regular proof of the existence and contents of the document itself. The record of the V. A. Court was not competent to establish this document, and, as before observed, it does not even attempt to do it.

If the record be conclusive evidence of the fact and contents of the survey, it must be for one of two reasons.

1. Because it was produced by the plaintiff—or, 2. By its own efficacy.

1st. The plaintiff was bound, by a provision in the policy, to produce to the defendant preliminary proof of *loss*, thirty days before the commencement of the suit, and it was necessary to show on the trial that he had exhibited this evidence to the defendant.

In point of fact, the decree of condemnation in the V. A. Court of New-Providence occasioned, or rather consummated that loss, and, therefore, the plaintiff produced a copy of that decree. His having done so furnishes no reason why the *recitals* in that decree should be evidence against him, much less why they should be received as incontrovertible; and the hardship of such a rule is the greater in a case like the present, where the plaintiff was required to produce the evidence. A protest of the master is usually produced among the preliminary proof, but it was never supposed that the insured was conclusively bound by all the allegations the captain might choose

to insert in it.   On the contrary, it has been held to afford no legal evidence.[a]

The general rule is, that a document coming from the possession of a party is evidence against him, only where *he claims under it*, and then it is subject to explanation.   Here we claim in opposition to it.

It may still be urged that the plaintiff was bound to produce the survey.   If it were necessary, we should wholly deny this position.   The policy imposes no such obligation on the insured, but simply to produce to the underwriters " proof of interest and *loss*."   In every other respect the parties contest upon the usual principle, viz. that each produces the evidence in his own favour.   Both parties so understood their reciprocal rights and duties.   The defendants required the production, *not of the survey*, but of the decree of condemnation.   The plaintiff furnished the document *as the decree of condemnation*, and nothing else.   We say, then, as Lord Kenyon justly observed in a similar case,[b] the record of the Court of V. A. proves the fact of the condemnation, and proves nothing else.

It is a rule properly and fully settled that the underwriters can make no objection to the preliminary proofs at the trial, except such as they made at the time they were exhibited.   The insured is only bround to produce what is specially required.[c]   The special verdict in this case finds that the plaintiff, on the defendants' requisition, produced the copy of the

*a* Senat v. Parker, 7 *T. R.* 158.

*b* Wright v. Barnard, *ub. sup.*

*c* Vose v. Robinson, 9 *Johns. Rep.* 192.

decree of the V. A. Court, " whereupon the defend-
ants required no further preliminary proof, but re-
fused to pay on the ground of unseaworthiness."
Agreeably to the spirit of the rule, they ought now to
be held to the ground then taken.

Again : this objection, viz. that we were bound to pro-
duce the survey, assumes a very important fact, which
we by no means admit, viz. that there is or ever was
a written document signed by the surveyors, which
could be produced. This throws us back to the
great and only question in this part of the cause, viz.
whether the record of the V. A Court is conclusive
evidence.

But we contend, that independently of its produc-
tion by the plaintiff, the sentence o ' the V. A. Court
has not, by virtue of the stipulation of the parties, or
its own efficacy, any such conclusive effect as is con-
tended for by the defendants.

It may be said that the necessary effect of the
clause is to refer the parties to the municipal regu-
lations of any port where the vessel may happen to
be in distress, for there the survey must be had. We
admit this in its fullest extent. The foreign Court
is to order the survey, appoint the surveyors, and the
proceedings are all to be conducted according to the
local regulations. But this is all. The parties here
made no stipulation *as to the rules of evidence*, upon
which the cause is to be tried here. It is universally
true that the evidence is to be given according to the
*lex fori*. We consented that the V. A. Court of New-
Providence might order the survey; but then we
were to be bound by the survey itself, produced in

Court here, or a copy duly proved according to *our* rules of evidence, and not by a partial garbled statement of that survey which the register or other officer of that Court might choose to make.

The Court below erred in overruling the several questions put to the witness Thompson. The petition was the foundation of the jurisdiction of the Court. The decree of a prize Court (a much stronger case) has been held void for want of a libel, as without it there could be no jurisdiction.[a] Suppose in this case there had been no petition, then the acts of the Court would have been wholly founded on the assent of the party.

The answer of the witness to the second question overruled by the judge, might have shown, not merely *crassam negligentiam* in the surveyors, but direct fraud and falsehood.

The third question is precisely similar to one which was considered proper by the Supreme Court of the State of New-York.[b] The Court there says, " the evidence of the declaration of Rogers (one of the surveyors) was admissible, because, though the plaintiff offered the survey as preliminary proof, yet the defendants offered it as proof in chief, and the plaintiff had a right to show the contradictory declarations of Rogers as a witness for the defendant."

The object of the last question was to show that the conduct of one of the surveyors proceeded from

---

*a* Sawyer v. Main Fire Ins. Co. 12 *Mass. Rep.* 291

*b* Huff. v. Mar. Ins. Co. 8 *Johns. Rep.* 163

interested motives, and thus to render more probable the fraudulent intent imputed to him. It was over-ruled on the ground that better evidence might have been produced. But the account sales, which is a commercial document, only admissible by a relaxation of the rules of evidence in regard to foreign transactions, was not *so good evidence*, as the *res gesta*, which he offered to prove. The witness, it is true, was not present at the sale, but he offered to prove the *fact* of his recovering payment from the surveyor, as a purchaser of part of the cargo.

1822.

Dorr
v.
The Pacific
Insurance
Company.

The rule is universal, that fraud may be proved, and when proved, will vitiate all proceedings. It must be proved *directly*, when the party injured by it has a direct opportunity ; and, therefore, in the ordinary case of misconduct of jurors or arbitrators, the party must move to set aside the verdict or award. But this rule does not hold where the person injured was not a party to the proceedings, and of course had no such opportunity. Whatever objections a party to the proceedings might take at the time, a third person may *take at any time*, when the proceedings are made to bear against him. But it may be said, that the captain was our agent, and the proceedings were at his instance. This begs the question ; for if the loss were such as to authorize the abandonment, then the captain by relation was the agent of the underwriters. Besides, the Messrs. Storrs were the agents of the defendants. Their interference in the proceedings is liable to strict scrutiny, and any impropriety ought to invalidate proceedings conducted under their direction, even though it were shown, (as it is not) that the Captain connived with them.

The case most analogous to this in common law proceedings, is that of a jury of view. Now, suppose it was shewn that such a jury never went on the land in question, would not their verdict have been set aside? The evidence he offered was equivalent to this. It was not necessary for us to show any agency of the defendants in the alleged misconduct of the surveyors. The evidence of fraud is necessarily circumstantial. It was enough that they sought to profit by it.

Mr. *Griffin*, contra, contended, (1.) that, by the *lex loci contractus*, it was the business of the assured to produce the survey ;[a] and that it was to be proved, not by examining the surveyors, but by an authenticated copy of the proceedings. This the plaintiff did produce, and read in evidence. It was a copy of all the proceedings. The sentence of condemnation, disconnected with the survey, would be unmeaning. Nor is it any objection, that the survey is set forth by way of *recital*. It would not have been better authenticated, had it been in *hæc verba*. A party producing in evidence, a deed or other instrument, is bound by the recitals.

But the objection to the competency of the evidence was too late. The bill of exceptions does not state that it was taken, until the judge charged the jury ;[b] but it evidently implies that the objection was

*a* Haff v. Mar. Ins. Co., 4 *Johns. Rep.* 132.
*b* Russell v. Union Ins. Co., 4 *Dall.* 423.

not taken sooner ; and the plaintiff recognized the survey, as being in evidence, by attempting to impeach it.

2. As to the objections to the rejected testimony, which was offered to show the survey to be incorrect: The survey was given in evidence by the assured. Expunge it, and what cause for a total loss appears ? In that event, the judgment would necessarily have been for the defendants. Now, it is a rule that a party cannot call a witness, and then impeach him. The reason assigned by Mr. Justice BULLER is, that it " would enable him to destroy the witness if he spoke against him, and to make him a good witness if he spoke for him, with the means in his hands of destroying the witness if he spoke against him."[a] This rule applies with equal force to impeaching a document, introduced by the party who seeks to impeach it. In the only case where the assured was allowed to contradict the survey, it was given in evidence not by *himself*, but by the underwriters.[b]

3. But this survey was a proceeding of a nature that the law does not allow to be impeached. It may be likened to an award of arbitrators, being a tribunal of the parties' own creation ; and you cannot, under the general issue, in an action at law, impeach the award of arbitrators, even for partiality or corruption.[c] The reason assigned for this doctrine is, that it would be a surprize on the opposite party.

a *Bull. N. P.* 297. *Phillips' Evid.* 232.

b Haff v. Mar. Ins. Co., 8 *Johns. Rep.* 163. 167.

c Wiles v. Maccarmick, 2 *Wils.* 148. *Kyd on Awards*, 327.

And does not this reason emphatically apply to the case now under consideration? Neither can corruption or partiality be pleaded to an action on the arbitration bond.[a] The only remedy is by a bill in equity, where all persons implicated may be made parties. In the present case, the assured might have applied to the Court of Admiralty, or filed his bill in Chancery.

Perhaps, however, the survey may be more properly likened to the verdict and judgment of a Court. The policy contemplates, that the survey is to be a *judicial* act, when it requires " a regular survey."[b] The policy vests jurisdiction in the Court of Admiralty at the port of necessity: and in the present instance, the agent of the assured called that jurisdiction into activity. It is a settled maxim, that a verdict and judgment cannot be impeached. The sanctified character of a judicial proceeding attaches itself even to a foreign sentence, which is conclusive as to those facts which it professes to decide; and that, too, even if the sentence is founded on unjust and piratical principles.[c] During the French revolution, the firmness of the English judges was put to a severe test in respect to the principle now in discussion, and so was that of this Court in the case of a judgment founded on the Milan decree.[d] Had it been competent, the party aggrieved would doubt-

a Braddick v. Thompson, 8 *East. Rep.* 344.
b Coit v. Delaw. Ins. Co., 1 *Condy's Marsh.* 159. n.
c Crondson v. Leonard, 4 *Cranch*, 434.
d Williams v. Armroyd, 7 *Cranch*, 423.

1822.

Dorr
v.
The Pacific
Insurance
Company.

less have been able to prove error, partiality, and even corruption in many of these foreign proceedings. But the reason why he could not be permitted to do this is stated by Mr. Justice JOHNSON, who says: " Not being at liberty, as it were, to lift the mantle of justice cast upon their decrees, it is, as to other tribunals of justice, immaterial what errors it covers ; neither the fallibility of the judge, the perjury of witnesses, nor the oppression and injustice of nations, will sanction a deviation from this general rule."[a] The only inquiry the Court feels itself authorized to make, is, had the foreign tribunal jurisdiction ? And there is but a single instance where the sentence or judgment is not conclusive; and that is where the party claiming the benefit of it appears before our Courts to enforce it.[b] So, also, other matters beside awards, verdicts, and judgments, are held unimpeachable. Thus, evidence was refused, to show that the official certificate of a regularly appointed land surveyor contained incorrect statements.[c]

We may perhaps concede another case in which judicial proceedings may be impeached viz. where the judgment is proved to have been obtained by fraud or unfair practices, by the party attempting to avail himself of it. But the fraud here meant is not fraud in the officers of the Court, but in the party. No fraud is imputed to the underwriters ; and as to the agents, none can with justice be imputed to them. Besides, they were only the general agents of

a Rose v Himely, 4 *Cranch,* 512. *Appx.*
b Phillips v. Hunter, 2 *H. Bl.* 410.
c Pollard v. Dwight, 4 *Cranch,* 421.

the defendants, and not their agents to perpetrate frauds. As to this survey, they were the agents of the assured, and did not at the time know that there was any insurance.

4. As to the other rejected evidence: the first item of it is the answer to the question, whether the master authorized the statement relative to the irreparable condition of the vessel. Her, the assured calls upon his captain to swear that the statement contained in the petition presented by his proctors to the Court was untrue. The acts of the attorney in the course of judicial proceedings bind his principal, and this, even if he have in fact no authority from the principal. The remedy must be against the attorney.[a] Here the authority of the proctors is not disputed. It is only contended that they misconceived or misrepresented the statement of their client.

All the other items of rejected evidence are liable to the objection that they contradict the record. Besides, affidavits of jurymen (and surveyors stand in the like predicament) cannot be admitted to impeach their verdict.[b]

As to the answer to the question, whether the Messrs. Storrs did not direct the master to call on one of the surveyors, as being a purchaser at the sale of the cargo, for the price, &c. Beside the consi-

a Anonymous, 1 *Salk.* 86. 1 *Keb.* 89. Reinholdt v. Alberti, 1 *Binn.* 461. Denton v. Noyes, 6 *Johns. Rep.* 296.

b Vaise v. Delaval, 1 *T. R.* 11. Jackson v. Williamson, 2 *T. R.* 281. Owen v. Warburton, 4 *Bos. & Pul.* 326. Rogers v. Rogers, 4 *Johns. Rep.* 485.

deration that the account of sales was better evidence; the declarations, or directions, of an agent, except when they are part of the *res gesta*, are not evidence against the principal. The circumstances, too, were irrelevant. No fair presumption flows from a purchase of part of the cargo

5. As to the supposed collision between the survey and the finding of the jury, it may be observed, that there is no necessary collision. The survey finds the vessel unseaworthy on the 16th of October. The jury find that she was seaworthy when she sailed, on the 9th of September. But ships have the principle of decay inherent in their constitutions, and how can the Court, judicially, say that during the 37 days which elapsed between the sailing and survey, the vessel may not have passed by the progress of decay from a state of bare seaworthiness to unseaworthiness? And, even supposing there is a collision, the finding of the jury must give way to the survey, because the finding in opposition to the survey was incorrect. Perhaps the Court ought, upon the production of the survey, to have directed the jury to find for the defendants, and to have rendered *instanter* that judgment which they rendered afterwards. But was this delay error, and such an error as the plaintiff can take advantage of?

The agreement that the survey shall be conclusive, is the voluntary agreement of the parties. Persons of full age and sound minds have a right to make what contracts they please; and to have them enforced, provided they be not unlawful. Courts

will not inquire whether the clause be reasonable or unreasonable, expedient or inexpedient. It can be no more disregarded than any other part of the policy, such as a warranty. Does the Court ever inquire into the reasonableness of a warranty?

The case cited from 3 *Cranch*, 137.[a] does not agitate the conclusiveness of the survey. It turned on the state of the pleadings. The plea was, that the vessel was unsound when she sailed on the 24th of October; and the Court refused to direct the jury that the survey made on the 26th of November was evidence of that fact. All the other cases admit that a condemnation for rottenness or unsoundness *alone*, is a conclusive bar.

The special verdict finds the survey to be a *regular survey.* It is not to be expected that such surveys will adopt the very words of the clause. They are made abroad, and frequently in a foreign language; and such a coincidence would be suspicious. It is sufficient if it appear from the whole survey, that rottenness is the sole ground of condemnation. The survey condemns, in strong and decisive terms, and no cause is intimated but decay. It is true the surveyors find the vessel leaky. But was not rottenness a sufficient cause for that? They condemn her " as being unsafe and unfit ever to go to sea again." Now, there is but one disease in a vessel that is incurable, that is, rottenness: and there can be no doubt, from the face of the survey, that the vessel was condemned for unsoundness. The object of the clause was to

*a* Mar. Ins. Co. *v.* Wilson.

have the state of a vessel definitely ascertained where she is broken up, and examined.   It is a wise provision, which has been sanctioned by experience, and adopted in other States, and ought not to be made a dead letter by interpretation.

Mr. *H. D. Sedgwick*, in reply, stated, that it had been contended that it was the plaintiff's duty to have excepted at the trial to the proof of the survey.   He did all that from the nature of the case could have been done.   The proof, such as it was, of the survey, was inseparably connected with the preliminary proof of loss, which he was bound to produce.   When the defendant's counsel claimed the effect now sought to be given to the supposed survey, the plaintiff resisted, and excepted to the opinion of the judge that the decree was sufficient evidence of the survey.

Besides, the plaintiff's guarded and qualified admission, viz. that the copy produced was a true copy of *the record of the Vice Admiralty Court*, shows the intention of the parties.   The defendants were therefore fully put upon their guard, and would have produced and proved the survey, if they could have done so.

An analogy is supposed to exist between the report of the surveyors, and the award of arbitrators; it is said that an award cannot be impeached under the general issue; and that partiality cannot be pleaded to an administration bond. But these remarks, true or false, apply only to the common law rules of pleading.   We are

1822.

Dorr
v.
The Pacific
Insurance
Company.

read to admit that the plea *nul tiel record*, which denies the fact of the award, would not lay a proper foundation for evidence to show partiality in the arbitrators. But it is enough for our argument, that an award may be impeached for the misconduct of the arbitrators; and whether for this purpose the resort be, as stated on the other side, to a Court of equity, or whether the common law tribunals are competent to the purpose, is a matter wholly depending on the municipal institutions of the country. Some remedy is confessedly provided. Now, here we had none but to impeach the survey, as we sought to do, on the trial. The opposing counsel showed how much he was pressed by this consideration, when he referred us to the Vice Admiralty Court at New-Providence, to have the proceedings overhaled in that tribunal. Such an application would be without a precedent. A survey is never granted, but upon the application of the ship master, founded on present necessity. The Holofern may now be at the bottom of the ocean, or if in existence, not at New-Providence; and if she were there, how could a survey *now* ascertain what her state was on the 8th of October, 1819, the time when the survey was had, and to which the question relates?

Supposing that we are wrong in contending that the *recitals* of the decree are not evidence against us, inasmuch as we produced the decree, still it is competent to us to disprove them. The rule is merely that a party shall not impeach the *character* of his own witnesses. He may disprove any *facts* stated by them. This is the more essential in the case of a

witness produced by *necessity*, e. g. the subscribing witness to a deed or will. The evidence in relation to the survey was in this case produced by us of necessit.

But we are told that if the survey be struck out of the case, there is no ground to support the verdict for either a total or partial loss. There are these grounds :—our policy,—a vessel seaworthy when the voyage commenced,—the springing a leak, and being forced from her course by the violence of the winds and waves,—stranded in going into a port of necessity,—there condemned for causes not legally shown, or not fully shown, or falsely stated,—the voyage lost,—ship and cargo sold,—and the damages assessed.

It is always to be remembered, that we produced the decree as that which, in point *of fact*, occasioned the loss, without reference to its being void or valid in point of law. Suppose the decree had shown that the ship had been libelled and sold for wages, would this have been more than *prima facie* evidence?

The decree in question was that of an *Instance* Court. The cases cited against us of the conclusiveness of foreign sentences, are all those of *prize* Courts, and the conclusive effect of the adjudication of these tribunals, is founded on peculiar reasons of international law.[a] This conclusive effect has been incautiously extended to cases between insurer and insured, where the title of the property is not drawn in question, but arises collaterally, and the ablest

a Croudson v. Leonard, 4 *Cranch*, 434.

judges have expressed their regret at this application of the principle,[a] and the effort is now to restrict it within as narrow limits as possible. It is enough for us, however, that this principle has never been applied to any but prize jurisdictions. It is against first principles, that a man should be bound by a decree to which he is not a party. The effect sought to be given to this decree of an Instance Court, is greater than could be claimed for a judgment of a Court of Westminster Hall, or even for a domestic judgment, unless against the same party, and after full notice.

*March 21st.*     Mr. Justice JOHNSON delivered the opinion of the Court.

The material question in this cause arises on the construction of a clause in the policy, expressed in these words, " and lastly, it is agreed that if the above vessel, upon a regular survey, should be thereby declared unseaworthy, by reason of her being unsound or rotten, or incapable of prosecuting her voyage on account of her being unsound or rotten," then the assurers shall not be bound to pay their subscription on this policy. The special verdict negatives the proposition of the vessel's being unsound at the time of her sailing, and it is contended for the plaintiff, that this neutralizes the condemnation and survey given in evidence; that contracts of insurance in their nature have reference to the commencement

*a* Fisher v. Ogle, 1 *Campb. N. P. Rep.* 418. Marshall v. Parker, 2 *Campb.* 70. Robinson v. Jones, 8 *Mass. Rep.* 540. Sawyer v. Maine Fire Insurance Company, 12 *Mass. Rep.* 291.

of the risk, at least with relation to questions of seaworthiness; and as it is impossible for a sound vessel to become rotten in a month, it is argued that the verdict of the jury ought to prevail against the evidence, or influence of the condemnation.

But we think otherwise. The words of the contract expressly look forward to a future event, " if the said vessel, upon a regular survey, *should* be thereby declared unseaworthy;" obviously contemplating two objects : first, that a state of rottenness ascertained at any period of the voyage insured shall be conclusive evidence of original unsoundness ; secondly, that the determination of that fact by means of a regular survey should be received as conclusive evidence between the parties. It is unquestionably true in the abstract, that a certificate of survey is not legal evidence ; because the examination of the surveyors themselves would be better. But parties may by compact adopt that or any other, as the criterion for deciding on their relative rights ; and in the case before us, the rights of the parties are made to depend on the fact of the survey rather than on the truth of it. They have chosen a rule of decision for themselves, and we are not to inquire into their motives or prudence in doing so. Whether the survey in this instance was duly substantiated, is the next question which the case presents. And here it becomes altogether unnecessary to decide whether a condemnation, in ordinary cases, carries with it the evidence of the fact or of the fairness of the survey. For, it must be observed that the exemplification of the proceedings in the Court of Vice Admiralty in New-Providence

1822.

Dorr
v.
The Pacific
Insurance
Company.

1822.

Dorr
v.
The Pacific
Insurance
Company.

was produced in evidence by the plaintiff himself. He claimed for a total loss, and to support this claim it became necessary to show that the vessel was condemned and sold, and the voyage broken up in New Providence. But if this exemplification should be admitted to prove those facts alone, without exposing the causes which led to them ; if the eyes of the jury were to be shut against every thing but the outside of the record, *non constat*, but the vessel may have been condemned for some cause for which the underwriters were not liable, and his case would not have been made out. Such subtleties cannot be countenanced ; the survey was a part of the *res gesta*, and the plaintiff could not possibly have made out the loss without introducing the survey which led to it.

The survey was, therefore, properly in evidence, and that it was " a regular survey," in the language of the covenant, is to be deduced from two considerations. First, if there was any irregularity in the survey, it is attributable to the plaintiff's own agents ; for even the Storrs, in this case, although the general agents of the company, were voluntarily selected by the captain. But, secondly, the survey bears every evidence of regularity or authenticity that can reasonably be required. On this subject, the nature of the contract of insurance casts the parties on the municipal regulations of all the world. Every commercial country has its own regulations on the subject of surveys. It is properly a subject of admiralty jurisdiction ; since mariners and freighters have to claim the aid of the admiralty to release them from their contract in cases of a defect of seaworthiness. A

regular survey must, therefore, in every instance, be such as is known to the laws and customs of the port in which a vessel happens to be. In this instance, both from the jurisdiction assumed by the Court, and the known habits of British jurisprudence, the mode of passing a survey through a Court to give it authenticity, may well be adjudged a regular survey according to the laws of the port into which this vessel was forced. If this be the case, it follows that the exemplification of the proceedings of that Court is not only admissible evidence, but perhaps the only evidence that could be received of the survey. And as to the idea of extracting the original return from the files of that Court, to produce it here, it will not bear reflection. The same considerations fully justify the Court below in rejecting the evidence of the captain, offered to rebut the decision of a Court, and that decision, both procured by the plaintiff's own agent, and produced by himself in evidence.

But it is contended, that though the construction of the covenant be with the defendants, and the survey be held to be legally before the jury, and "a regular survey" within the meaning of the policy, still it is not conclusive against the plaintiff, inasmuch as it certifies the existence of other causes of loss, besides the decayed state of the vessel.

It is unquestionably true, that the survey must respond to the covenant, and if the vessel be declared unseaworthy, for any additional cause, besides her being, in the language of the policy, "unsound or rotten," the defeasance, if it may be so called, will not avail the defendant. But what is the case here?

All the facts to be gathered from the exemplification of the condemnation, taking it from the commencement to the close, are, that the vessel encountered tempestuous weather, that she was forced to put into New-Providence, in consequence of springing a leak, that the Captain " conceiving her not only unfit to proceed to sea again in her present state, but altogether unworthy of being repaired," libelled her in the Admiralty, and prayed a warrant of survey upon her ; upon issuing the warrant, the surveyors proceeded to an examination, and finding the vessel very leaky, stripped off part of her ceiling, and found her, as they report, " in a very decayed condition." They thereupon certified her to be "altogether unworthy of being repaired, and that she ought to be condemned as being unsafe and unfit ever to go to sea again." Here *decay* is exhibited exclusively as the mortal disease, and every thing else is either inducement or consequence. A bad vessel might have made a safe voyage, had she experienced no trying weather, and a good vessel would have encountered gales without injury. Springing a leak was the consequence of that state of decay which weakened the whole fabric, and her being unworthy of repair, or unfit to go to sea, was no additional cause of condemnation, but the mode in which her disease produced her destruction. Causes upon similar policies, and under similar circumstances, have in several instances passed in review before the tribunals of this country, and received decisions consequant to this. The case between the *Marine Insurance Company of Alexandria* and *Wilson*, decided in this Court, did

not resemble this in any prominent feature, except that the policy contained the same clause, and the defence was attempted under the protection of it. But neither in the evidence nor in the pleadings, did the defendants bring themselves within the provisions of the clause.

1822.

Dorr
v.
The Pacific
Insurance
Company.

This Court is therefore of opinion, that there was no error in the decision of the Court below. But an inconsiderable omission (made palpable by the briefs furnished by both parties) having been committed in copying the record, and which leaves it doubtful in what form this decision is to be certified to the Court below, this Court will, for the present, order a certiorari to issue, that the correction may be duly made.

Certiorari awarded.