The CONTINENTAL INSURANCE
COMPANY, Plaintiff-Appellant,

v.

HERSENT OFFSHORE, INC.,
Defendant-Appellee.

No. 34, Docket 77–7089.

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1977.

Decided Nov. 21, 1977.

---

Timothy A. Hanan, New York City (Macklin, Hanan & McKernan, New York City), for plaintiff-appellant.

Stephen Gillers, New York City (Warner & Gillers, P. C., New York City; Kenneth E. Warner, New York City, of counsel), for defendant-appellee.

Before GURFEIN and VAN GRAAFEILAND, Circuit Judges, and COFFRIN, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

During the night of December 16, 1972, a 135 foot barge, bareboat leased to Hersent Offshore, Inc., and insured by Continental Insurance Company, capsized in Long Island Sound while moored about a mile offshore. This is an appeal from an interlocutory judgment following a non-jury trial in the United States District Court for the Southern District of New York, holding Continental liable to Hersent for losses covered by its Hull Policy.

■ The district judge found that the barge capsized as the result of a combination of three factors: a storm of gale proportions, the taking on of water along one side which caused a severe list, and the sliding of a crane and boom toward the listing side. The second and third factors, he said, were caused in great part by the first. He found that, as of the effective date of the term policy and at the time the barge left Carteret, New Jersey to go to the work site, it was "fit for its intended service", i. e., seaworthy. *Boudoin v. Lykes Brothers Steamship Co.,* 348 U.S. 336, 339, 75 S.Ct. 382, 99 L.Ed. 354 (1955); *Aguirre v. Citizens Casualty Co.,* 441 F.2d 141, 144 (5th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). He also found that the addition of a ten foot extension to the barge's boom at the work site did not make the vessel unseaworthy and that, before the crew left the barge in anticipation of the storm, the boom was lowered between steel uprights affixed to the cradle and the crane's houselock and swing brake were secured. Finally, he found that all the watertight compartments on the barge were closed. We have reviewed the record to determine whether these findings were clearly erroneous, *see New York Trap Rock*

---

* Of the District of Vermont, sitting by designation.

Corp. v. Tug Devon, 371 F.2d 430, 431 (2d Cir. 1967), and have concluded that they were not.

■ There is ample support, therefore, for the district court's conclusion of law that the proximate cause of the capsizing was a peril of the sea, included in the "perils of the sea" clause of the policy. *See New York, New Haven & Hartford Railroad v. Gray,* 240 F.2d 460, 465 (2d Cir.), *cert. denied,* 353 U.S. 966, 77 S.Ct. 1050, 1 L.Ed.2d 915 (1957). This clause has been held to cover "occasional visitations of the violence of nature, like great storms, even though these are no more than should be expected." *Hecht, Levis & Kahn, Inc. v. New Zealand Insurance Co.,* 121 F.2d 442 (2d Cir. 1941). Indeed, fortuitous actions of the sea much less violent than storms have been held to be within its intended coverage. *See, e. g., Allen N. Spooner & Son, Inc. v. Connecticut Fire Insurance Co.,* 314 F.2d 753 (2d Cir.), *cert. denied,* 375 U.S. 819, 84 S.Ct. 56, 11 L.Ed.2d 54 (1963); *New York, New Haven & Hartford Railroad v. Gray, supra.*

■ Although Robert Green, Hersent's superintendent in charge of the barge, was found to have been imprudent in not altering the vessel's mooring lines to protect it better from the effects of the storm, his negligence is no bar to Hersent's recovery for a loss caused by a peril of the sea. *New York, New Haven & Hartford Railroad v. Gray, supra,* 240 F.2d at 464. The Inchmaree clause of Hersent's policy provides additional coverage for the negligence of masters, mariners, engineers and pilots.[1] However, before Hersent could recover under either the perils of the waters clause or the Inchmaree clause, the district judge had to determine that the coverage was still in effect when the barge capsized and that it had not been terminated or suspended because of the prior breach of certain warran-

ties in the policy. *See Levine v. Aetna Insurance Co.,* 139 F.2d 217, 218 (2d Cir. 1943); *Shamrock Towing Co. v. American Insurance Co.,* 9 F.2d 57, 60 (2d Cir. 1925). We hold that the district judge was correct in finding compliance with the express warranties under the circumstances here. We hold further that, by the warranties' express terms, the assured was permitted to designate a person responsible for making judgment as to the severity of weather conditions and to see that the proper precautionary procedures were followed.

By an endorsement attached to the policy, Hersent warranted that the conditions contained in a so-called "Storm and Heavy Weather Plan" would be complied with. This plan described three possible heavy weather conditions, each with a different degree of severity. Condition C was defined as "a warning status with severe squall weather"; Condition B was "an alert condition with a hurricane or northeast storm well off shore"; Condition A was "a major alert condition with a hurricane approaching Hatteras and the possibility of passing through or in the vicinity of the area." As the severity of the described weather conditions increased from Conditions C to A, so also did the extent of the precautionary measures which Hersent was required to take for the protection of the barge. For example, under C, tugs were required to be available in the event conditions deteriorated and assistance was needed; under B, an alert was required for tugs to stand by in case conditions became unduly severe and assistance was needed, and under A, at least one tug with a minimum of 1000 horsepower was to take the barge in tow.

Although the district judge found that the storm was not a "typical northeast storm", he found that it was "essentially a northeast storm as the phrase is customari-

---

1. The district court held that Green was master of the barge. Although Green was Hersent's superintendent for the entire project, the construction of an off-shore platform for unloading tankers, he was on the barge every day and supervised its operations. The district court quite properly looked to the function which Green was performing at the time of the loss. *Allen N. Spooner & Son, Inc. v. Connecticut Fire Insurance Co., supra,* 314 F.2d at 758. This involved the making of sea-going decisions for the protection of the barge which was under his command. In carrying out these duties, he was acting as the vessel's master.

ly used."[2] Operating on the assumption that Condition B thereby became applicable, he held that there was no breach of any warranty contained therein.[3] We conclude, however, that with respect to Continental's liability under the policy, the decision as to the severity of weather conditions was not one to be made retroactively by the court. The warranty endorsement provided that "one person will be designated responsible for making judgment as to the severity of conditions, and to see that the proper procedures are followed." Hersent's designee was Robert Green, the master of the barge. It was the exercise of Green's judgment that determined what procedures were to be followed.

Many years ago, the Supreme Court, in upholding the so-called "rotten bottom" clause in a marine policy,[4] said that the "parties may by compact adopt that or any other, as the criterion for deciding on their relative rights . . .." *Dorr v. Pacific Insurance Co.,* 20 U.S. 581, 611, 5 L.Ed. 528 (1822). Once the parties have "chosen a rule of decision for themselves", the Court added, it would not "inquire into their motives or prudence in doing so." *Id.* 20 U.S. at 611, 5 L.Ed. 528. Continental and Hersent chose a rule of decision for themselves; *i. e.,* the judgment of Robert Green as to the severity of conditions. If there are any fair doubts that this is the proper construction of the language contained in the policy, they must be resolved against Continental. *Allen N. Spooner & Son, Inc. v. Connecticut Fire Insurance Co., supra,* 314 F.2d at 755.

Condition C required only that crane booms, loose gear and equipment would be secured and that tugs .would be available. The district court's findings established that, under Green's direction, these precautions were taken. Whether more were required depended upon the exercise of Green's judgment. There is no contention that he acted in bad faith in the exercise of his judgment. If he erred, this was negligence for which Hersent was covered by the Inchmaree clause in its policy. *Allen N. Spooner & Son, Inc. v. Connecticut Fire Insurance Co., supra,* 314 F.2d at 758.

Affirmed.

---

**2.** At the time the barge capsized, the wind was out of the northwest.

**3.** Continental, of course, disagrees, contending that Hersent failed to take certain mooring precautions required by Condition B and did not have a tug standing by at the work site.

**4.** The Court described the clause in the following words:

"and lastly, it is agreed that if the above vessel, upon a regular survey, should be thereby declared unseaworthy, by reason of her being unsound or rotten, or incapable of prosecuting her voyage on account of her being unsound or rotten," then the assured shall not be bound to pay their subscription on this policy.

*Dorr v. Pacific Insurance Co., supra,* 20 U.S. 581, 609, 5 L.Ed. 528 (1822).