BRANDEGEE *against* THE NATIONAL INSURANCE COM-PANY.(a)

*In an action on a policy of insurance, containing a clause, "that if the vessel, upon a regular survey, should be declared unseaworthy, by reason of her being unsound or rotten, or incapable of prosecuting her voyage on account of her being unsound or rotten, the assurers should not be bound to pay their subscription," the declaration stated, that "by storms, winds, tempestuous weather, and by the perils and dangers of the seas, the vessel became leaky, and was greatly broken and damaged, and upon her arrival at the island of St. Johns, upon a survey duly had upon her, she was found injured in her timbers and planks, and, inasmuch as she could not receive her necessary repairs there, nor safely proceed to sea to procure repairs elsewhere, she was condemned and sold, &c. whereby she became totally lost to the plaintiff," &c.*

*The defendants pleaded in bar, admitting the arrival of the vessel at St. Johns, as stated in the declaration, and that a survey was made, &c. But setting it forth more fully, by which it was found, "that a great part of her timbers and planks, from the stern post to the stem of the ship, on both sides, were entirely rotten," &c.: Held, that as the plea admitted the cause of action as stated in the declaration, and set up new matter in avoidance of the action, which the plaintiff was not bound to prove, and which involved a question of law, on which the defendant was entitled to the judgment of the Court, the plea was good on demurrer.*

*It is sufficient, in such a case, if the survey state particular facts, from which the conclusion of rottenness and unsoundness is drawn, and for that cause alone, she is declared unseaworthy, or incapable of proceeding to sea. It is not necessary that the survey should follow the exact terms of the clause in the policy.*

THIS was an action on a policy of insurance, dated *October* 28, 1818, on the ship *Montgomery*, "from *New-York* to *St. Eustatia*, with liberty to touch and trade at *St. Eustatia*, on the outward passage, and at and from *St. Johns*, with liberty to touch at *St. Croix*, for freight, to a port of discharge in the *United States*." The declaration contained three counts on the policy, and the general money counts, &c. The first count set forth the policy of insurance, which contained the following clause : " And it is further agreed, that if the said vessel, upon a regular survey, should be thereby declared unseaworthy, by reason of her being unsound or rotten, or incapable of prosecuting her voyage on account of her being unsound or rotten, then the assurers shall not be bound to pay their subscription on the said policy." The plaintiff in this count averred, among other things, that while the said ship was sailing and proceeding on her said voyage to *St. Eustatia*, and the island *of St. Johns*, and before reaching either of the said islands, &c. by stormy winds and tempestuous weather, and by the perils and dangers of the seas, she became and was leaky, and greatly broken and damaged, and upon her arrival at the island of *St. Johns*, and a survey duly had upon her, she was found injured in her planks and timbers ; and inasmuch as she could not receive her necessary repairs at the said island of *St. Johns*, and could not safely proceed to sea, to procure

(a) This cause was decided in *May* Term last.

such repairs elsewhere, she was, by legal authority there, for the reasons last mentioned, condemned, and was thereupon sold at public auction," &c.

The second count, after stating the policy, &c. as in the first count, averred, that the vessel, on her voyage out, " encountered stormy winds and tempestuous weather, by reason whereof, and by the mere perils and dangers of the sea, was injured in her timbers and planks, and sprung a leak, and upon her arrival in the island of *St. Johns,* she was overhauled, in order to ascertain the extent of the said leak, upon which occasion some of her timbers and planks were found to be decayed, and upon a due and legal survey, it was deemed and so decided, by the persons legally appointed to make said survey, that the reparation of the said ship could not be done at *St. Johns ;* and it was likewise deemed and so decided, by the same persons, that the said ship was not able to proceed to sea in her then present state ; and thereupon the said ship, her tackle, apparel, and furniture, were sold and disposed of at public auction ; and became, and were wholly lost to the plaintiff."

The defendants pleaded six pleas : 1. *Non-assumpsit.* 2. As to the *first, second,* and *third* counts, because a regular survey was had upon the ship, at *St. Johns,* upon which survey she was declared incapable of prosecuting her voyage, on account of her being rotten, &c. with a verification. 3. As to the first count, that though upon the arrival of the vessel at *St. Johns,* a survey was duly made upon her, by which she was found injured in her planks and timbers, &c. yet, that in and by the said survey, it was further found and declared, that the said vessel was incapable of prosecuting her voyage on account of her being rotten, that is to say, incapable, on account of her being rotten, of the further prosecution of the voyage insured, &c. 4. A like plea to the second count. 5. To the first count, because the defendants say, " That though true it is, that on the arrival of the said vessel at the island of *St. Johns,* as in the first count of the declaration mentioned, a survey was duly had upon her, by which she was found injured in her planks and timbers, &c. yet it was further found and declared, in and by the said survey, that a great part of the timbers and planks, from the stern

UTICA,
October, 1822.

BRANDEGEE
v.
NATIONAL
INS. CO.

post to the stem of the ship, on both sides, were entirely rot-
ten, and that the reparation of the ship could not be done
there, and that the ship was not able, in her then present
state, to go to sea, &c. 6. The *sixth* plea, which was to the
second count, was, in all respects, like the fifth plea.

Issue was joined on the first plea, and the plaintiff ten-
dered issues, in which the defendants joined, to the second,
third, and fourth pleas. To the *fifth* and *sixth* pleas the
plaintiff demurred; and the defendants joined in demurrer.

*Anthon*, in support of the demurrer, contended, 1. That
the pleas demurred to were bad in form and in substance;
in form, because they amounted to the general issue. (5
*Comyn's Dig. tit. Pleader.* (E. 14.) 1 *Salk.* 394. *Hob.*
127. *Cro. Eliz.* 871. *Skinner,* 362. pl. 5. 3 *Cro.* 157.
2 *Mod.* 274.) *Marshall (on Insurance,* 694, 695,) says,
that *non-assumpsit* is the most usual and proper plea to an
action on a policy of insurance, as it not only puts in issue
every fact alleged in the declaration, but enables the defend-
ant to give in evidence any matter which goes to disaffirm
the contract, or to discharge the plaintiff's demand under
it, as that the ship was not seaworthy, &c.

2. The pleas are bad in substance. The clause in
the policy, to which they relate, does not make the *survey*
conclusive evidence as to the fact of the vessel being rotten;
and if it is not conclusive, but merely *prima facie* evidence,
it cannot be pleaded in bar. (*Haff* v. *Marine Insurance Com-
pany,* 8 *Johns. Rep.* 163. 167.) In *Garriguez* v. *Coxe,*
(1 *Binney's Rep.* 592.) the Supreme Court of *Pennsylva-
nia* held, that such a clause in a policy did not make a *sur-
vey* conclusive, so as to be a bar; but the defendant was
bound to prove that the *unsoundness* arose from *decay,* not
from *accident.* In *Watson* v. *The Insurance Company of N.
A.* decided in the Circuit Court of the *United States,* in *April,*
1808, (*Condy's Ed. Marshall on Insurance,* 159. *b.* note.)
there was the same clause in the policy, and the Court de-
cided, that the report of the surveyors was not evidence of
the facts contained in it, but only that a survey had taken
place. In the case of the *Marine Insurance Company of*

*Alexandria* v. *Wilson*, (3 *Cranch*, 187.) the question as to the conclusiveness of the survey was not decided.

UTICA,
October, 1822,

BRANDEGEE
v.
NATIONAL
INS. Co.

*Wells*, contra, insisted, 1. That the plea was good in point of form. *Chitty* (*Chitty's Pl.* 497, 498.) lays down the rule on this subject, and which is supported by the authorities cited by him. "Any ground of defence which admits the facts alleged in the declaration, but avoids the action by matter which the plaintiff would not be bound to prove, or dispute, in the first instance, on the general issue, may be pleaded specially." Now, the plea, in this case, admits what is stated in the declaration, and alleges new matter by way of avoidance, to wit, the survey. It is true, that it might be given in evidence under the general issue, but there are many such matters which may be pleaded specially. The clause relative to the survey, was introduced into the policy for the very purpose of putting an end to the question as to the seaworthiness of the vessel; and the survey is made conclusive as to the fact of rottenness, and unsoundness of the vessel, and of her incapacity, for that cause, of prosecuting the voyage.

2. Then, does the survey in this case amount to a bar of the suit? We admit that the survey must be regular, and must declare the vessel to be unseaworthy, because of rottenness and unsoundness, and *solely* on that ground. In *Garriguez* v. *Coxe*, the unseaworthiness of the vessel was owing to a *mixed* cause. So, in *Haff* v. *Marine Insurance Company*, the cause of the loss was of a mixed nature, and not ascribable to rottenness alone. We contend, that if the survey is made in conformity to this clause in the policy, and declares the unseaworthiness of the vessel, and her incapacity to prosecute the voyage to be solely owing to her rottenness and unsoundness, it is conclusive, and forms a complete bar to the action. The clause was introduced for the benefit of the insurer, to guard against the consequences of the doctrine laid down in the case of *Depeyster* v. *The Columbian Insurance Company*, (2 *Caines' Rep.* 85.) and to prevent his being liable to pay for a vessel not seaworthy when she commenced her voyage. Now, the survey, in this case, fully comes within the terms of the clause. The cause of the unseaworthiness of the vessel, and of her in-

capacity to proceed to sea, is declared to be rottenness, and decay of her timbers and planks. No violent storms and tempests were encountered. The vessel merely sprung a leak. In the case of *Steinmetz* v. *The United States Insurance Company*, (2 *Sergeant & Rawle's Rep.* 293.) the survey stated, that " her stem, apron, bends, and most part of her timbers are decayed, as, also, a considerable part of her planks, from which circumstances, in our opinion, to make her a good, staunch, and seaworthy vessel, would cost a great deal more than she would be worth when finished ;" and the Court held it to be conclusive, and a bar to the action. They were of opinion, that it was not necessary that the surveyors should exactly conform to the exact words in the policy ; but it is sufficient if the survey states the facts and circumstances as to the *decay*, and rottenness, from which the general conclusion is drawn of such unsoundness and rottenness as renders the vessel unseaworthy. This case is perfectly analogous, and in point.

*Anthon*, in reply, said, that the plea in this case did not admit the cause of action as stated in the declaration. That, as to the substance of the plea, it was agreed, that if the cause of the incapacity of the vessel to proceed on her voyage was mixed, the survey was not a bar. Now, the first and second count state, that the vessel was injured by storms and tempests, and that repairs could not be made at *St. Johns*. If these allegations are admitted by the plea, then the cause of the vessel's unseaworthiness is not rottenness alone, but of a mixed nature.

SPENCER, Ch. J. delivered the opinion of the Court. The principal special cause of demurrer is, that the 5th and 6th pleas amount to the general issue. It is, also, objected to them, that they are bad in substance, in not admitting the averments in the declaration. In the case of the *Bank of Auburn* v. *Weed*, (19 *Johns. Rep.* 300.) we thus laid down the rule : any matter of defence which denies what the plaintiff, on the general issue, would be bound to prove, may, and *ought* to be given in evidence under the general issue, and a plea denying such facts, is bad on special demurrer :

but any ground of defence which admits the facts alleged in the declaration, and avoids the action, by matter which the plaintiff would not be bound to prove or dispute, in the first instance, may be specially pleaded. The case of *Hussey* v. *Jacob*, (1 *Lord Raym.* 87.) was referred to in the case cited. That case was thus: An action of *assumpsit* was brought against the acceptor of a bill of exchange. The defendant pleaded in bar, the statute of gaming, (16 *Ch.* II. ch. 7.) by which the bill was rendered void. One of the objections was, that the defendant ought to have pleaded the general issue, and given the matter pleaded in evidence, the statute having avoided the contract. The Court decided, that where the defendant has special matter consisting only of bare matter of fact, but intermixed with matter of law, which will avoid the charge or action of the plaintiff, he is not obliged to plead the general issue, but may plead it specially, for otherwise he would be obliged to commit a point of law to the jury, who are ignorant of it, which, the Court say, would be absurd. The principle laid down in the case cited, is, in my judgment, a sound one, with this qualification annexed to it, that such matter of defence must admit the facts alleged in the declaration, and avoid them by matter which the plaintiff would not be bound to prove in the first instance, provided the general issue only had been pleaded. (1 *Chitty's Pl.* 497. 1 *Tidd's Pr.* 599, 600.)

The first and second counts of this declaration set forth a good cause of action; a loss of voyage by the perils insured against; and the plaintiff was bound, in the first instance, to prove no more, to maintain his action, than the facts he had alleged. He did not set forth facts which show that the ship was unseaworthy, by reason of her being unsound or rotten; nor any incapacity in the ship to prosecute her voyage, on account of her being unsound or rotten. On the contrary, it would seem, that her innavigability proceeded from injuries sustained by stormy winds, tempestuous weather, and the perils of the sea, whereby she became leaky, greatly broken, and damaged; and that she could not receive her necessary repairs at *St. Johns*, and could not proceed safely to sea, to procure repairs elsewhere; and, therefore, she was condemned and sold. The pleas

admit the cause of loss stated in the declaration, but set up new matter, which the plaintiff could not have been required to prove ; and this new matter involves a question of law, on which the defendant has a right to the judgment of the Court, according to the sound doctrine in *Hussey* v. *Jacobs*.

If the survey, admitted in part, in the first and second counts, but more fully set forth in the pleas, amounts to a declaration by the surveyors, that the ship was unseaworthy by reason of her being unsound or rotten, and that she was incapable of prosecuting the voyage from that cause, it is decisive upon the rights of the parties. They have seen fit to stipulate, " that if the said vessel, upon a regular survey, should be thereby declared unseaworthy, by reason of her being unsound or rotten, or incapable of prosecuting her voyage, on account of her being unsound or rotten, then the assurers should not be bound to pay their subscriptions on the policy." They have made the survey, however the facts may be, conclusive between them; and this being their contract, they are bound by it, and no Court has a right to alter it. (1 *Condy's Marsh. on Ins.* 159. *b.* in the notes.) From the plaintiff's allegations, which are admitted by the plea, with the additional facts which the pleas assert as also appearing in the survey, the case stands thus : The ship was found injured in her planks and timbers, so that she could not receive her necessary repairs at *St. John's*, and could not safely proceed to sea to procure such repairs elsewhere ; and a great part of the timbers and planks, from the stern-posts to the stem, on both sides, were entirely rotten ; that the repairs of the ship could not be done there, and she was not able, in her then present state, to go to sea, and she was, therefore, condemned and sold. In the case of *Steinmetz* v. *The United States Insurance Company*, (2 *Sergeant & Rawle's Rep.* 296.) the policy contained the same clause, in almost the same words, as in this policy. In that case, a survey was had, and the Court considered it as settled by several cases, in which the construction of a similar clause had been discussed, that where the condemnation was for unsoundness from decay, and for no other cause, the underwriter was discharged. In that case, the surveyors certified, that on examination of the schooner, " her stern, apron,

bends, and the most part of her timbers, are decayed, as also a considerable part of her plank, and that it would be eligible to sell her in her present state." *Tilghman*, Ch. J. was of opinion, that the condemnation was founded solely on decay, no other cause being mentioned. He observed, that it was not said, in express terms, that the vessel was unsound or rotten, but it was said, that her principal parts were decayed, which is the same as rotten, and no other cause is assigned for her not being seaworthy ; that where the particular parts found to be decayed are mentioned, and afterwards the general conclusion is drawn, that the vessel was not seaworthy, he considered rottenness as the cause of condemnation. *Yates*, Justice, thought it unreasonable to expect that the return of the surveyors should conform to the expressions used in the policy, which was not open to their inspection. It was enough if, in fact and substance, it agreed with it ; and he considered the survey, in that case, as exhibiting a particular statement of facts equivalent to general unsoundness or rottenness in the hull ; and that it brought the vessel within the true meaning of the clause in the policy. I can only express my entire acquiescence in the reasoning of these distinguished Judges; it seems to me impregnable and conclusive. The return of the surveyors, in this case, states, that a great part of the timbers and planks, from the stern-posts to the stem, on both sides, were entirely rotten ; that repairs could not be made at *St. John's*, and that the ship was not able, in her then state, to go to sea. Now, her inability to encounter the further prosecution of the voyage, is attributed to no other cause than to the rottenness of her essential timbers and planks ; and the general conclusion of incapability to proceed to sea, is a conclusion drawn from these facts ; and this, in effect, amounts to a declaration, that she could not go to sea from rottenness. The allegation in the survey, that the ship was found injured in her planks and timbers, connected with the fact, that her timbers and planks were rotten, do not show that the injury arose from the perils of the sea, disconnected with the specified rottenness. The implied admission in the survey, that the ship was reparable, does not contradict the fact that she was unseaworthy from rottenness, for ships ma-

UTICA,
October, 1822.

BRANDEGEE
v.
NATIONAL
INS. CO.

terially rotten and decayed, may be repaired. The contract between the parties is, that if the vessel, upon a regular survey, should be thereby declared unseaworthy, by reason of her being unsound or rotten, then the assurers should not be bound by their subscription on the policy. That this event has occurred, appears to me to be so plain a proposition, that I abstain from pursuing the inquiry any further. There must be judgment for the defendants, with leave to the plaintiff to reply, on payment of costs.

Judgment for the defendants, accordingly.