UTICA.
Aug. 1824.

Griswold
v.
National
Insurance
Company.

GRISWOLD and GRISWOLD *against* THE NATIONAL INSURANCE COMPANY of the city of NEW-YORK.

On demurrer, the party who commits the first substantial fault in pleading, shall have judgment against him.

ASSUMPSIT. The first count of the declaration was upon a policy of insurance on the ship *William*, dated *August*

A plea which is bad in substance is not aided by a replication.

In declaring upon a contract, which is sufficiently stated in the first count, it need not be repeated in the subsequent counts of the same declaration ; but it is enough to declare that it is the same as is set forth in the first count ; and per *Woodworth*, J. interrupting *Wells*, counsel, S. P.

Thus, where the plaintiff declared upon a policy of insurance, setting it out in the first count, and in the subsequent counts declared as upon another policy, " for the same voyage, and upon the same subject matter, and upon the same terms and stipulations, and containing therein to the same effect as in the said policy of insurance in the said first count mentioned, &c." *held*, that the subsequent counts were good

Form of pleading a survey upon a vessel, according to the rotten clause in a policy of insurance. *Note* (*a*).

Such a survey is properly made within a reasonable time after the vessel's arrival at her port of destination—it need not be made before.

21st, 1819, at and from *New-York* to *Cadiz*, averring that the ship sailed on the voyage insured, and alleging her physical total loss, and that the ship became of no use or value, by perils of the sea. The second count set forth another policy upon the same vessel and voyage, in the same terms as the policy described in the first count, and averred the loss to be a technical total one, as amounting to more than a moiety of the ship. The third count was the same as the second, superadding a general average loss by a jettison. The fourth was the usual money counts, consolidated in one. The policy, as set forth in each count, contained the usual rotten clause, " that if the above vessel, upon a regular survey, should be thereby declared unseaworthy, by reason of her being unsound, or rotten, or incapable of prosecuting her voyage on account of her being unsound or rotten, then the assurers should not be bound to pay their subscription on that policy." The policy in the second and third counts was set forth thus : " For the same voyage, and upon the same subject matter of insurance, and upon the same terms and stipulations, and containing therein to the same effect as in the said policy of insurance in the said first count of this declaration is above mentioned," &c.

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

In pleading such a survey, the defendant need not state the particular manner and circumstances of the survey, but merely that it was regular—circumstance 's of imp achment come more properly from the assured, if he have a right to impeach the survey at all, as to which, *Quere.*

An averment that the ship was by such survey declared unseaworthy, by reason of being rotten, is sufficient, within the rotten clause ;

But an averment that the ship was found by the survey to be in a very *bad* and rotten condition, is not good. It implies a mixed cause of unseaworthiness ; whereas, to make a survey a flat bar, within the rotten clause, it should appear plainly that the unseaworthiness arose from *rottenness* solely.

Matter which comes more properly from the plaintiff, need not be stated in the plea.

A survey is always made at the instance, and for the benefit of the owner or master of the vessel, and goes, of course, into his hands The assurers are not parties to the survey.

It is proper, but not indispensable, for a survey to state the particulars of the decay.

The plea stated a survey made at *Cadiz*, and the replication traversed that the survey was made at *Cadiz or elsewhere ; held* bad on special demurrer.

The issue must be as broad as the traverse, and a rejoinder to such a replication would be a departure.

Declaration, averring a physical total loss of a ship : plea, a survey at *Cadiz*, the port of destination : replication, a different survey at *Cadiz*, and traversing the survey in the plea : *held*, a departure ; for the ship arriving at her port of destination, there could not be a physical total loss.

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

*Pleas :* To the 1st, 2d and 4th counts, the general issue—to the 1st and 2d counts, a regular survey on the vessel, upon and immediately after her arrival at *Cadiz*, to wit, on the 15*th October*, 1819, on which she was declared unseaworthy, by reason of her being rotten :(*a*) to the 1st count, alone, a regular survey on the vessel, upon and immediately after her arrival at *Cadiz*, to wit, on the 15*th October*, 1819, by which she was found to be in a very bad and rotten condition, and that, to make her seaworthy would amount to $5000 or upwards, according to the report of *Thomas Hill*, one of the surveyors, a ship-carpenter of that port, and in which the surveyors coincided, and that it was their firm opinion it would be best for all parties concerned in the ship, that she should be condemned : to the 2d count, alone, the same, omitting the report of the ship-carpenter : to the 3d count non-assumpsit, as to the general average, and as to the residue a survey in the same form as the last mentioned plea to the 2d count.

(*a*) This plea was as follows :

"And for a further plea in this behalf, as to the said 1st and 2d counts of the said declaration, the said *The National Insurance Company in the city of New-York*, by leave, &c. say, that the said *Nathaniel L. Griswold* and *George Griswold* ought not to have or maintain their aforesaid action thereof, against them, in respect of the matters contained in the aforesaid 1st and 2d counts of the aforesaid declaration, or in either of them, because they, the said *The National Insurance Company in the city of New York*, say, that the said ship *William*, mentioned in the said 1st and 2d counts, did, in the due prosecution of the voyage described in the policy of insurance set forth and contained in the said 1st count, and referred to and intended in and by the said 2d count of the said declaration, arrive at *Cadiz*, in the said policy mentioned, and upon and immediately after the arrival of the said ship there, in the course of the said voyage, and in reference to the said voyage, and to any damage which the said ship had sustained in the prosecution thereof, a regular survey was had upon the said ship, at *Cadiz*, aforesaid, to wit, at the city of *New York*, and in the county of *New-York* aforesaid, on the 15*th* day of *October*, *A. D.* 1819, upon which survey the said ship was thereby declared unseaworthy, by reason of her being rotten, and this the said *The National Insurance Company in the city of New-York*, are ready to verify. Wherefore, they pray judgment, if the said *Nathaniel L. Griswold* and *George Griswold*, their action aforesaid thereof against them, ought to have or maintain in respect of the matters contained in the aforesaid 1st and 2d counts of the aforesaid declaration, or either of them.

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

*Replication,* to the 2d plea, which covered the 1st and 2d counts, that the ship arrived at *Cadiz, September 25th,* 1819; and after the expiration of at least 15 days, to wit, on the 11*th* of *October,* 1819, a survey on the vessel, by which it was found that the stern frame had apparently worked, the wooding ends under the counter open, and the ship making a great deal of water; that after the expiration of at least 19 days, and not sooner, to wit, on the 15*th* of *October,* 1819, a second survey, supplemental to the first, to ascertain the expense of the repairs reported by the first survey, by which survey it was found as stated in the third plea, with an averment that the second survey is the same as the one mentioned in the second plea; that this survey was not ordered by a Court of Admiralty, or other competent jurisdiction; that the surveyors were not sworn according to maratime law and usage; that it was not a regular survey within the policy; and concluded with a formal traverse, that this survey, or any other had upon the ship at *Cadiz,* or elsewhere, found the vessel unseaworthy by reason of her being rotten in manner and form, &c.; to the 3d plea the same, omitting the traverse; to the 4th plea the same, except concluding with a traverse that the survey mentioned in the 4th plea was of any other tenor and effect than in the replication set out; to the residue of the 5th plea, the same as to the 4th.

Special demurrer to each of the replications, assigning the following causes :

I. To the replication to the 2d plea :

   1. The traverse seeks to put in issue matters not in the plea.

   2. It is double and multifarious.

   3. No apt and proper issue can be taken upon the traverse.

   4. The traverse tenders an issue upon matters contained in the inducement.

   5. In other respects double, uncertain, &c.

II. To the replication to the 3d plea :

   1. It does not traverse or avoid the matters contained in the plea, except by inference and legal construction.

   2. It is evasive, uncertain, not issuable, and argumentative, in alleging that the surveys were made, one at

UTICA,
Aug. 1824.
~~~~~
Griswold
v.
National
Insurance
Company

least 15, and the other at least 19 days after the arri-
val of the ship.

3. It is double and multifarious, seeking to put in issue
distinct and independent facts, thus : 1. That the sec-
ond survey was not had by the order of a Court of
Admiralty, or other competent authority. 2. Sur-
veyors not sworn. 3. Not a regular survey, with-
in the meaning of the policy. 4. That there was
another survey of *October 11th.* 5. That the one
of the 15*th* was supplemental to the other.

4. In other respects double, uncertain, &c.

III. To the replication to the 4th plea :

1. The traverse seeks to put in issue the matters con-
tained in the inducement.

2. It contains only matter of legal inference and con-
struction, arising out of the inducement.

3. No apt or proper issue can be taken on it.

4. It is in other respects uncertain, &c.

IV. To the replication to the residue of the fifth plea, the
same causes as to the replication to the fourth plea.

Joinder in demurrer to each separately.

The cause was argued at *May* term, 1823, by (the late)
Mr. *J. Wells,* for the defendants, in support of the demur-
rers, and *G. Griffin & T. A. Emmet,* for the plaintiffs.

*J. Wells,* in support of the demurrers. The pleadings in
question all turn upon the rotten clause in the policy. The
second plea sets forth the survey according to its legal effect,
and the traverse is to a matter not alleged in the plea. The
averment is of a survey at *Cadiz,* on the 15*th* of *October.*
The traverse does not deny this, but says merely that neither
by that, *nor any other survey, was it found, &c.* This is
travelling out of the plea, which speaks of but one survey.
A traverse of matter not in the plea is bad. (*Killigrew* v.
*Sawyer,* 2 *Ventr.* 79. *Gwinne* v. *Poole,* 2 *Lutw.* 1065. *Tal-
bot* v. *Woodhouse, id.* 1430. *Humphreys* v. *Churchman,
Cas. Temp. Hardw.* 275.) This traverse is moreover double.
It speaks not only of the survey set forth, but of *any other*

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

*survey.* The rule is, that the issue must be as broad as the traverse ; and what kind of an issue would this give us ? It would be an affirmative on our part, that there was such a survey on the 15*th* of *October, or some other su. vey.* We had no choice but to rejoin in this manner. Going down to the Circuit, upon such an issue, would be a mis-trial. (1 *Chit. Pl.* 519, 520.)

The replication to the third plea omits the traverse, and is, therefore, the more defective. It contains mere matter of inducement, which cannot be traversed. (1 *Chit. Pl.* 596.) Again : the object is to impeach our survey. The replication attempts to do this by setting out another survey, and showing the defects which exist in ours. Thus it contains, in itself, several distinct and independent matters, not all leading to a single point ; and is defective in this particular. You may state as many matters as you please, by way of inducement, if you make them all converge to one point ; but you cannot set up a variety of matters independent of each other, and leave them there. They must be connected, and made to constitute a single whole. (1 *Chit. Pl.* 512, 577, *and the cases there cited. Patcher* v. *Sprague,* 2 *John. Rep.* 462. *Cooper* v. *Heermance,* 3 *id.* 315.) The last case is in point. In replying *per fraudem* to a plea of an insolvent discharge, the plaintiff set up distinctly every species of fraud recognized by the insolvent act, constituting as many distinct points of defence. This was holden ill. The replication is also defective, in averring that the second survey was supplemental to the first. *Brandegee* v. *The National Insurance Company,* (20 *John.* 328) makes the survey conclusive. It must be judged of by itself, and the pleadings should relate directly to it. It is uncertain and argumentative in its attack upon the survey. The effect of similar language is considered in *Pullen* v. *Benson,* (2 *Salk.* 628.) The same objection applies to the part which speaks of time, viz. *after the expiration of* 19 *days, and not sooner,* in reply to our plea that the survey took place immediately. Besides, it tenders, in this respect, an issue on time, which is immaterial. (*Rogers* v. *Burk,* 10 *John.* 400.)

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

The traverse in the replication to the 4th, and the *residue* of the 5th plea, seeks to put in issue matter contained in the inducement, which is not traverseable. It concludes that the survey mentioned in our pleas was not of any other tenor or effect than as in the replication set forth, which draws into inquiry the whole matter stated by way of inducement. (1 *Chit. Pl.* 596. *Com. Dig. Pleader*, (G. 18, 20).)

All these replications are bad, as containing a negative pregnant, (2 *Saund.* 314. 319, *n.* 6) beside being argumentative. Instances of bad traverses, for this latter reason, will be found in *Goddard* v. *Thorlton*, (*Yelv.* 170) *Roy* v. *Kilderley*, (*Sid.* 427.) The same subject is also considered in *Fanshaw* v. *Morrison*, (2 *Salk.* 520) and *Snider* v. *Croy*, (2 *John. Rep.* 227.)

Again : the qualifications of this survey, insisted on by the plea, are mere matters of legal inference ; and the replication is, therefore, bad. (1 *Saund.* 23, *n.* (5). 2 *id.* 159, *a. n.* (10). *id.* 161, *n.* (11).) The replications should be confined to mere matters of fact.

Nor are we to be prejudiced by our admissions. A demurrer does not make a replication good, because its truth is admitted by this form of taking advantage of its defects: No facts are admitted by a demurrer, except such as are well and sufficiently pleaded. (*Co. Litt.* 72, *a.*)

The idea of these replications is probably taken from *Condy's Marshall*, 159, *a. note* (15) ; but it is no objection to the survey that it was not taken under the order of a Court of Admiralty. It is not the practice to procure such an order, and there cannot be a more dangerous principle than the one contended for. It is upon surveys of this description that vessels are to be sold, the assured entitled to abandon, or the assurer to defend under the rotten clause. In many cases, the sanction of a Court of Admiralty cannot possibly be procured. Suppose, as is every day the case, a vessel is driven into a port where there is no Court of Admiralty : must you then seek out the next nearest Court ? It is, perhaps, well enough, and may be necessary, where there is a Court of Admiralty, that its sanction should be procured ; but the pleader who wishes to avoid the survey, because this

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

formality is omitted, should, at least, shew that there is a Court of Admiralty at the port where the survey takes place. The replication here assumes the broad ground, that a survey is void, in all cases, unless done under the authority of that Court. The practice is otherwise. This business is generally done under the order of our consuls; if there be no consul, under that of the magistrates of the place; and if there be no magistrates, then by discreet men. Not a single survey was ever made in this city, under the orders of a Court of Admiralty, though that Court is always open here. It is usually made through the wardens of the port. According to the replication, we have been in an error on this head ever since the establishment of the government. But this question was considered in *Dorr v. The Pacfick Insurance Company*, (7 *Wheat.* 581) and it was said by Judge *Johnson*, that "every commercial country has its own regulations on the subject of surveys. It is properly a subject of Admiralty jurisdiction; since mariners and freighters have to claim the aid of the Admiralty to release them from their contract, in cases of a defect of seaworthiness. A regular survey must, therefore, in every instance, be such as is known to the laws and customs of the port in which a vessel happens to be." This survey, then, like every other, must be presumed regular, until the contrary is shewn. Allow that it must be made according to the usage and custom of the port where it is taken, still the plea, which would impeach it, should shew that it was not taken in conformity to the custom.

But the replications defeat themselves. They show that the 2d survey was supplemental to the first, and was made by the same persons who made the first. Hence, as the survey first set out is regular, it follows that the second was so. The first must be considered regular, because every pleading is to be taken most strongly against the pleader. (*1 Saund.* 259, *n.* (8). *De Symonds v. Shedden*, 2 *B. & P.* 155.) In point of practice, nothing is more usual than two or three surveys, before the operation is complete. In the case of *Dorr v. The Pacifick Insurance Company*, the survey acted upon and recognized was a second one. Again : what issue could we

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

take upon this part of the replication, which says that it is not a survey, within the true intent and meaning of the policy. Matter of law is pleaded, instead of fact, and the case of *Kidder* v. *West,* (3 *Lev.* 167) is in point.

What is the effect of the survey of the 11*th* of *October?* It states that the stern frame had apparently worked. the wooding ends under the counter open. and the ship making a great deal of water. The language shews that it was merely an incipient survey, to be completed at another day. Accordingly, a few days after, a further survey is made. There is nothing inconsistent between the two ; but both constitute one only. The looseness of the stern frame, &c. are merely stated as the effects of the rottenness, so that the vessel is condemned for this cause, the *casus fœderis,* between the parties. It matters not what was the result of the first survey, if the final condemnation was for rottenness. (*Garrigues* v. *Coxe,* 1 *Bin.* 592. *Armroyd* v. *The Union Insurance Company,* 2 *id.* 394. *Steinmets* v. *The U. S. Insurance Company,* 2 *Serg. & Rawle's Rep.* 293. *Haft* v. *The Marine Insurance Company,* 8 *John.* 163. *Dorr* v. *The Pacific Insurance Company,* 7 *Wheat.* 581.) A mixed cause of condemnation is quite another thing.

The effect of a survey is given in *Brandegee* v. *The National Insurance Company,* (20 *John.* 328.) and the cases there cited. When the loss arises from rottenness, and this fact appears by the survey, this survey is in itself a bar to the action. It is, therefore, the proper subject of a plea, and not of evidence merely. It may better be put to the Court by way of plea, which is a shorter and more direct mode of determining the question.

The replication to the 2d plea is bad even on general demurrer. The first count of the declaration avers a physical total loss. We plead the arrival of the vessel and the survey. The replication then varies from that count. It admits that the vessel arrived and sets forth a technical total loss. The replication should support or enlarge upon the declaration. (2 *Saund.* 84, *a.* *Co. Litt.* 304, *a.* *Allen* v. *Watson,* 16 *John.* 205, *Andrus* v. *Waring,* 20 *John.* 163,

*Archbold*, 247.) It is unnecessary to quote authorities to shew that a departure is bad on general demurrer.

The declaration is also defective. The 2d and 3d counts set forth the policy by reference merely to the 1st. This may have the authority of *Chitty*, but is not warranted by any direct adjudication. *Phillips* v. *Fielding*, (2 *H. Bl.* 131) supports this objection.

[WOODWORTH, J. I think you will find this form of declaring supported by *Crookshank* v. *Gray et ux.* (20 *John.* 344.)]

G. *Girffin & T. A. Emmet*, contra. The party committing the first fault in pleading must have judgment against him. (*Woodward* v. *Robinson*, 1 *Str.* 302, 303. *Com. Dig. Pleader*, *M.* 2.) The 2d and 3d counts are good by way of reference. Why should a long policy be reiterated in each count? This would be against the policy of our jurisprudence, which abridges pleadings and other proceedings as far as possible, with the view to a saving of expense. This form is according to the practice of the best pleaders among the profession.

This survey is set up as a flat bar; thus shutting out all inquiry as to its merits, and making it conclusive. It is then incumbent on the defendant to shew clearly that it is within the rotten clause. There are but three cases extant in which this survey is holden a bar.

1. The survey is alleged to have been made after the voyage had ended. This voyage was at and from *New-York* to *Cadiz*. The averments as to time are the same in all the pleas. This differs, therefore, from the cases of *Brandegee* v. *The National Insurance Company*, (20 *John.* 328.) *Steinmets* v. *The U. S. Insurance Company*, (2 *Serg. & Rawle's Rep.* 293,) and *Dorr* v. *The Pacific Insurance Company*. (7 *Wheat.* 581.) To be a bar, the survey must be within the clause, which contemplates one pending the voyage. Without this clause, the survey would have been mere preliminary proof. [*The counsel read the usual rotten clause from a printed policy.*] It means a survey while the ship is sailing,

UTICA,
Aug. 1824,

Griswold
v.
National
Insurance
Company.

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company,

or in some port of necessity ; not that the underwriter shall be discharged because the vessel is unseaworthy as to some other voyage, but as to the very voyage.  " The vessel may be condemned for a variety of reasons, which imply nothing against her seaworthiness when the risk commenced ; but if she be condemned as being *unsound* or *rotten*, this can so seldom occur unless she was so when she started, that the parties are willing to consider this circumstance, if establish-ed by regular survey and condemnation, as evidence of the fact of want of sea-worthiness, when she sailed, without go-ing into other proof which it is always difficult to procure." (*Condy's Marshall,* 159 *b. n.*(15)·  In construing a clause which is to bar us, the Court will not extend it by implication.

The object, as between the assurers and the assured, is al-ways the state of the vessel, not at the end, but during the voyage.  The word *immediately* has no legal meaning, and the pleas may be read *upon and after the vessel's arrival.* Every vessel has a point of time, at which it passes from a sperate to a desperate state, or arrives at a situation of un-seaworthiness.  Who shall undertake to say that the unsea-worthiness did not attach after the arrival ?  Can a court of justice judicially say so ?  If you depart from the construc-tion for which we contend, that it must be during the voyage, where will you stop as to the time of survey ?  At one day or one year after the arrival of the ship ?  To strengthen this construction still further, look at other parts of the poli-cy.  The company takes upon itself to bear certain perils in *this* voyage, which may, by construction, be extended to and reiterated in every clause.  The reason for its insertion is evident.  To make a policy attach, the ship must be sea-worthy at the point of starting.  It being difficult to deter-mine this, the policy adds another precaution, viz. that a fu-ture survey finding unseaworthiness shall be evidence of original rottenness.  When a ship arrives at her port of des-tination, the precaution ceases to be necessary.  The voy-age is finished.  It does not appear how long after the arri-val the survey was had.

2. The manner of the survey is not set forth.  The words of the rotten clause are, that if, *on a regular* survey, &c.  To

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

say that a survey was made, is not enough; but the party should set forth the manner and circumstances under which it was made. In this particular, the pleas vary from those in the cases cited to support them. Facts should be shewn to enable the Court to judge whether the survey be regular or not. Instead of finding fault with the manner in which we deny the necessary circumstances, and impeach the survey at *Cadiz* as disagreeing with usage, the *onus* lies upon the defendants, who must shew affirmatively that it is agreeable to usage. The survey is a judicial act, and should be performed under the direction of a Court of Admiralty, unless this is excused by the absence of such a Court from the port of survey. If not done through the instrumentality of such a Court, it lies with the defendant to shew the reason, in order to give a survey the effect of a pleaded bar. It was decided in *Robinson* v. *Clifford*, (*Condy's Marshall*, 159, *a. note*) that a warrant of survey and report is a judicial proceeding. Now, a party relying on a judicial proceeding, is bound to set it out particularly. The words *regularly* and *truly*, &c. will not do. (*Com. Dig. Pleader*, (*E.* 18.) *Cruger* v. *Cropsey*, 3 *John. Rep.* 242. *Curry* v. *Henry*, 2 *John. Rep.* 433. *Slade* v. *Drade*, *Hob.* 296. *Margan* v. *Dyer*, 10 *John.* 161. *Evens* v. *Munkley*, 4 *Taunt.* 48.) If there be no Court, and no usage at the port, this should be shewn by way of excuse. If there be usage, this should be shewn in order to establish the regularity. It involves a question of law, and should be put upon. the record, that we may have a writ of error, if determined erroneously. The regularity is the important and turning point of the controversy. (*Bac. Abr. pleas and pleading*, (*I*) 3. 1 *Saund.* 298, *n.* (1). *Walker* v. *Maxwell*, 1 *Mass. Rep.* 104. *Hill* v. *Montagu*, 2 *M. & S.* 377.) The contents of the survey are important, because it is agreed that if there be a mixed cause of condemnation, it will not operate as a bar. "Where a man avers that he has done a thing which involves in it a question of law, whether it is done as the law directs, the *quo modo* must be averred." (*Per Reeve, J. in Wright* v. *Tuttle*, 4 *Day's Cas.* 322, 323.) Suppose the pleas had said merely that a survey was held, leaving out the word *regular,*

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

this would have been defective ; and if so, the epithet will not help it, because it has no legal meaning any more than the word *immediately*. No issue could be joined upon either of these words. The law has no ear which listens to such general words. (1 *Chit. Pl.* 240. *Mure* v. *Kaye*, 4 *Taunt.* 34.) It is like the word *sufficient*. Where a man was bound to shew a sufficient discharge, it was held not enough to aver generally in pleading that a *sufficient* discharge was offered to be shown ; but the party must shew the particulars, in order that its sufficiency may be judicially seen. (*The case of the Abbot of Strata Mercella*, 9 *Co.* 25. *a.*) Suppose the policy had provided, as is sometimes done, for leaving the adjustment of a loss to arbitrators ; would it be good pleading to say that it had been adjusted by a *regular* award ? Was an award ever pleaded in this way ? No. You must alledge that the matter was submitted, and give a history of the steps taken.

The first plea does not set forth the survey at all, but only its legal effect. Now, though this may answer in declaring, it will not do in a plea. (1 *Chit. Pl.* 236, 237. 1 *Saund.* 276, *a. n*(2). *Clements* v. *Lambert*, 1 *Taunt.* 207, *Shepherd, Serjt. arguendo*. *Wright* v. *Clements*, 3 *B. & A.* 509, *per Holroyd, J. Bender* v. *Sampson*, 11 *Mass. Rep.* 44, 45.) In the last case it is said, of pleading a discharge under a sealed power of attorney, that " It is in all cases to be pleaded specially, how and in what manner the discharge was made : as the sufficiency of such an instrument, the purport and effect of it, is a question of law, which the party whose deed or contract it is alledged to be. has the privilege of referring to the Court."

The Court will not conclude that the survey in the 2d plea is different from the one set out in the 3d and 4th. Now, do these surveys bring the case within the rotten clause ? We wish to argue from both connectedly ; but they have not referred to the first ; and we will take the 3d plea for the present. It alleges that the ship was *bad and rotten, &c. and the firm opinion of the surveyors that it would be best for all parties concerned that she should be condemned ;* but she is not declared incapable of prosecuting the voyage on account of rottenness. It may mean a mixed cause ; and should not be

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

so construed as to exclude any other. The survey does not say, as in *Steinmets* v. *The U. S. Ins. Company*, (2 *Serg. & Rawle*, 293) that the vessel was decayed, and stop there ; but it finds her "bad" and rotten ; and how are the Court to say that the *badness* is all rottenness ? If *badness* can mean any thing else beside rottenness, it destroys the flat bar, and lets us in to try the question. The plea should have averred, at least, that rottenness was the sole cause.

Again, the surveyors do not say that she was so rotten as to be unseaworthy, or as to be incapable of prosecuting a voyage. This was requisite, though it might have been enough to find that $5000 were necessary in repairs, had the survey been pending the voyage.

This plea also omits to state previous examination ; on whose application the survey was made ; how the surveyors came to a knowledge of the rottenness ; and in what single particular the ship was rotten. In the cases relied upon to support this plea, there is, at least, an examination stated, and some particulars.

In *Dorr* v. *The Pacific Insurance Company*, (7 *Wheat. Rep.* 581) at page 611, *Johnson*, J. says, " The words of the contract expressly look forward to a future event, if the vessel, upon a regular survey, should be thereby declared unseaworthy ; obviously contemplating two objects : first, that a state of rottenness, ascertained *at any period of the voyage insured*, shall be conclusive evidence of original unsoundness." This shews his understanding that the survey should be made *during* the voyage.

But we shall probably be met by saying that the voyage was not at an end. Now the end of a voyage is an arrival and remaining in safe moorings for 24 hours ; not if the ship be ordered off for quarantine, it is true ; but if she is there uninjured by any previous mal-accident for 24 hours, she is at the risque of the assured. The voyage in question was ended within this rule. If made within 24 hours, the survey might have been good ; but it cannot be so within the rotten clause, if made after that time. Great strictness should be observed throughout. In *Armroyd* v. *The Union Insurance Company*, cited from the 2d of *Binney*, therefore, *Tilghman*,

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

Ch. J. says. "I am called on to give my opinion on the construction of the memorandum, and of the survey and condemnation in this case. It is a contract which bears hard upon the assured, especially in long voyages; but being the agreement of the parties, and not being contrary to law, no Court has a right to say that it is void. It is to receive a fair construction; but not to be extended beyond the plain meaning of the words. If there is a regular survey and condemnation for *unsoundness* or *rottenness*. the assurers are discharged. When I say unsoundness, I mean as the law was decided in *Garrigues* v. *Coxe*, an unsoundness arising from decay, and not from accidental injury. But then the unsoundness or rottenness must be the *sole* cause of condemnation. If the condemnation is grounded partly on rottenness and partly on damages sustained by violence of storms, &c. the case is not within the contract. In the present case the survey and condemnation are regular in point of form. There was a petition to the Judge by the captain, a warrant of survey, a report of the surveyors, and a decree founded thereon. It is not necessary that the Judge should make use of the word *condemn*, in cases of this kind. It is enough if, upon the whole matter. he orders a sale of the vessel. There is no occasion to decide whether, in all cases. there must be a *decree* of a Judge. Surveys may sometimes be made in places where there is no Court. But on this I give no opinion." The opinion of the learned Judge shews also that the survey must be sanctioned by a Court of Admiralty, or something done which is equivalent to this. In the case of *Steinmets* v. *The U. S. Insurance Company*, cited from 2 *Sergeant* & *Rawle*, the same Judge says, "If this be not a condemnation within the meaning of the policy, the clause will be nugatory, because, upon a survey, the particular parts which are found in a decayed state are always mentioned; and indeed it would not be proper to say, in general, that the vessel was rotten," evincing the Ch Justice's idea of the strict regularity which should attend these surveys.

It may be said we have cured all defect by replying to these pleas. But a replication does not cure any defect which is

the subject of a general demurrer. (*Comly* v. *Lockwood*, 15 *John.* 191, *per Thompson*, *C. J. Anonymous*, 2 *Salk.* 519. *Com. Dig. Pleader*, (*M* 1, 2.) The objections that the survey was not made during the voyage; that the sole ground of rottenness is not stated; that the surveyors have not detailed their steps in proceeding to the survey; that the manner and circumstances are not detailed, &c. are objectionable by general demurrer, if so in any shape. At common law a general demurrer reached every defect except duplicity. Then came the statute of 27 *Elizabeth, c.* 5, & 4 *Ann. c.* 16, (& *vid.* 1 *R. L.* 120, *s.* 7,) by which a special demurrer is required for every thing but substance involving the merits of the cause, and the right of the case, which these objections do. There is not, in the language of the statute, enough appearing upon the face of these pleas, to enable the Court, according to the right of the case, to give judgment for the defendant. In *Mure* v. *Kaye*, (4 *Taunt.* 34,) a general demurrer was allowed, because facts and circumstances were not set forth. In *Beake* v. *Tyrrell*, (1 *Show.* 6, *Carth.* 1, *S. C.*) a capture and condemnation as prize, were pleaded as a justification, and held bad on general demurrer, because not shewn how the vessel was prize, nor by whom condemned. *Com. Dig. Pleader,* (*M.* 2,) states that want of certainty is not cured by replying, and cites *Poph.* 209. True, there are exceptions to this rule of *Comyn*; but these are where the want of certainty is merely formal; as if the circumstances going to the regularity had here been informally set out, instead of being omitted altogether. Other cases, where replying has been holden not to cure a bad plea, may be found in *Grocer's Co.* v. *Archbishop of Canterbury*, (3 *Wils.* 221, 234,) *Burdick* v. *Green*, (18 *John.* 14,) and *Boardman* v. *Ives*, (10 *id.* 164, n. (a).) In the last case the question was much the same as here. It related to the form of giving jurisdiction to the Court in pleading, like the present, which is a question of jurisdiction as to the surveyors.

The replications are the same substantially, except that, to the 3d plea. They deny the existence of circumstances

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

Griswold
v.
National
Insurance
Company.

which the defendant ought to have stated. In pleading, if the party do not set out an entire instrument, the opposite party may do it. (*Fisher* v. *Pimbley*, 11 *East*, 188.) We have done nothing more. So much was necessary in order to spread the whole merits before the Court. We were led to it by a want of fulness in the pleas. It is said the replications set out too much, but this will not vitiate. (*Duffield* v. *Scott*, 3 *T. R.* 374. *Bac. Abr. tit. Pleas and Pleadings*, (*I*) 4. *United States* v. *Burnham*, 1 *Mason*, 67.)

Here is no departure. We aver, in the first count, that the vessel was so much injured as to be useless to us—not merely a physical total loss as is supposed. There is then no departure or inconsistency in saying that the vessel arrived at *Cadiz* in a disabled state.

As to multifariousness of matter, you may state what number of facts you please, if they all go to make only one point. (1 *Chit. Pl.* 512, 576. *Patcher* v. *Sprague*, 2 *John. Rep.* 462. *Currei* v. *Henry*, *id.* 433. *Thomas* v. *Rumsey*, 6 *id.* 26.) Accordingly, all the matters shewn by us tend to the same point, which is an irregular survey.

As to the traverse that there is *any other survey*, it is, at most, surplusage. But this traverse applies to the second plea only, which is bad, as professing to set out a survey according to its legal effect merely. You may sometimes traverse matter of law, as simony, seisin in fee, or in tail; thus denying not only the facts, but the law arising from them.

*Wells*, in reply. The questions in relation to this survey, are mere questions of law; and it is desirable that they should be determined by the Court upon the special pleas. It is said that these are bad, because we have not set out the authority of, and circumstances attending the survey. But by alleging a survey, all the necessary authority and circumstances to render it perfect are involved equally as if we had mentioned them specifically. It is said that rottenness does not appear to be the sole ground of unseaworthiness; that the word *bad* may signify something else; but *bad* and rotten are evidently used as convertible terms. The former

is spoken of as the consequence of the latter, according to the natural import of the phrase.

UTICA,
Aug, 1824.

Griswold
v.
National
Insurance
Company.

Again; it is objected that the survey should be pending the voyage ; that a survey is not conclusive after the perils of the voyage have ceased, the underwriters then having no interest in it. But the underwriters have an interest in determining whether the vessel was a proper subject of insurance, as being or not being within he rotten clause. The plea says that the survey was made upon and immediately after the arrival ; and the Court will presume, if necessary, that this was before the voyage terminated, or the 24 hours' mooring. But the time is immaterial. The survey is in reference to the contract between the parties ; and is not to affect their rights of recovery or defence. The plaintiffs would make the curious distinction. that it is valid for their purposes to enable them to recover ; but not for our's as a matter of defence. The clause relating to the perils of the sea, doubtless means during the voyage ; but cannot be carried forward to the time of the survey. The survey may be made after the voyage in reference either to a total or partial loss, or the right of recovery within the rotten clause. Two things are contemplated. If the vessel be unsound or rotten, and therefore unseaworthy, the underwriters are not to pay if the loss happened from rottenness, whether the vessel arrived or not at the port of destination. The object was not to have the vessel thrown upon the hands of the underwriters as a total loss, when it arose from perils not insured against. It is enough that the survey is made within a reasonable time ; and this was so even by the replication.

The form of pleading the survey is proper. It is stated to be a regular survey, held at the port of *Cadiz ;* and the first plea says that the vessel was found, within the policy, unsound and rotten. Each plea must stand upon itself. (*Per Spencer, J. in Currie v. Henry, 2 John. Rep.* 433, 437.) One plea cannot be invoked in aid of another. These are, therefore, to be considered as distinct surveys in each plea. The law presumes the survey to be regular. A judgment means, *ex vi termini,* a regular judgment. So of a survey ;

UTICA,
Aug. 1824·

Griswold
v.
National
Insurance
Company.

and in all the cases cited to shew that we must be particular, the party was defending his conduct in a proceeding to which he was a party, if we except the case of the sequestration mentioned *arguendo* in *Hobart*, 296, referred to the year books, (5 *Ed.* 4, 29,) where I presume even this will be found attended with the same circumstance.(*a*) One is not bound to defend himself by the regularity of a proceeding to which he is not a party. A familiar case is that of a Sheriff sued for the execution of process. It is enough if it appear to be regular upon its face. So of this survey: We are not a party to it. Surveys are made on the part of the assured: The Court will notice, judicially, that this is so. It is the duty of the assured to have the survey made as a matter of preliminary proof; and when presented as such, this is the first knowledge of the underwriters upon the subject. (*Haff* v: *The Marine Ins. Co.* 4 *John. Rep.* 132. 1 *Chit. Pl.* 220. *Chandler* v. *Grieves*, 2 *H. Bl.* 606, *n.* (*a*).) These cases shew that the Court will take judicial notice of marine customs. We are not bound to, nor can we do more than introduce the simple survey, which the captain is bound to take officially in behalf of the assured. What is one's duty shall be presumed to have been done. (*Bull. N. P.* 298. *Hilts* v. *Colvin*, 14 *John.* 132.) The plaintiffs, then, are here attempting to impeach a proceeding of their own, carried on for their benefit, of which they claim to avail themselves in preliminary proof, but would impeach, the moment it is attempted to use it against them. It was certainly enough for us to state the survey as they themselves furnished it to us.

Matters which come more properly from the other side, need not be stated by us. (*Com. Dig. Pleader*, (C. 81.) 2. *Saund.* 62, *b. n.* (5). *Casseres* v. *Bell*, general principle, per Ld. *Kenyon*, C. J. 8 *T. R.* 167. *Chapman* v. *Pickersgill*, 2 *Wils.* 147, per Ld. Ch. J. The *King* v. *Holland*, per Buller, J. 5 *T. R.* 615.) Now, the underwriter could not know the *quo modo* in which the survey is done. The plaintiffs require him here to set out what he is no party to ; and

(*a*) The case is stated, with about the same brevity, in 5 *Ed.* 4, 29, as in *Hob.* 296.

UTICA,
Aug, 1824.

Griswold
v.
National
Insurance
Company.

matter of which he is entirely ignorant. We state enough to constitute a defence ; and the plaintiffs may spread the whole matter before the Court. In *Hill* v. *Montagu*, (2 *M. & S.* 377, 378,) *Bayley*, J. says, " I have always understood that the party who pleads a contract, must set it out, if he be a party to the contract. It lies as much within the knowledge of the defendant as of the plaintiff." In *Wright* v. *Tuttle*, (4 *Day's Cas.* 422,) *Reeve*, J. says, " If the *quo modo* had been averred, it would not have rendered the averment ill ; but it would have been a needless surplusage."

Now, suppose the pleas to be bad in substance, you cannot always go back to a defect, because it may be reached by a general demurrer. True, in the language of Ch. J. *Thompson*, quoted on the other side, it must be bad on general demurrer ; but though it be so, if the replication be such as to waive the substantial defect, it cures the plea. Here, had the plaintiffs demurred directly for lack of going into particulars as to the survey, it would have brought up the question ; but by answering over, they have waived the right to except for this cause. *Stutfield* v. *Somerset*, (*Cro. Eliz.* 825,) was the case of a palpably bad plea, yet it was cured by a special replication. (*Com. Dig. Pleader*, (*E.* 37.) *Knighton* v. *Morton*, 3 *Lev.* 311, *S. P.*)

*Curia, per* SUTHERLAND, J. This case comes before the Court upon several special demurrers to the plaintiffs' replications to the defendants' pleas in bar ; and the first question for consideration is, whether those pleas are substantially good ; for if not, although the demurrers may he well taken, still the plaintiffs will be entitled to judgment, unless the defects of the pleas are cured by the replications.

The pleadings turn upon the rotten clause in the policy of insurance, which provides, " that if the vessel, upon a regular survey, should be thereby declared *unseaworthy by reason of her being unsound or rotten* ; or incapable of prosecuting her voyage on account of her being unsound or rotten, then the assurers should not be bound to pay their subscription on that policy."

UTICA,
Aug. 1824.

Griswold
v.
National
In urance
Company.

The special plea to the 1st and 2d counts of the declara-
tion, set forth, " that upon and immediately after the arrival
of the ship at *Cadiz*, in the course of the said voyage,
and in reference to the said voyage, and to any damage
which the said ship had sustained in the prosecution there-
of, *a regular survey was had, &c. on the 15th* day of *October*,
1819, *upon which survey the said ship was thereby declared
unseaworthy by reason of her being rotten*," with a verifica-
tion ; and for further plea to the first count, *a regular* sur-
vey as before, whereby it was declared that the said ship
*was in a very bad and rotten condition*, and that she was not
worth repairing, and that it was best for all parties that she
should be condemned, &c.

The same plea as the last was also pleaded separately to
the 2d and 3d counts.

These pleas are said to be substantially bad on three
grounds.

1. Because the survey is alleged to have been made after
the arrival of the ship at the port of destination, and, of
course, after the termination of the voyage insured ; and,

2. Because the pleas do not state the manner and cir-
cumstances of the survey ; but merely state it to have been
regular.

3. Because the survey itself, as set out, is bad, and does
not amount to a bar.

1. There is no validity in the first objection. The sur-
vey was made by the assured as a foundation for an aban-
donment of the ship as for a total loss, in order to charge
the underwriters ; and they certainly have a right to avail
themselves of it, for the purpose of showing that the injury
sustained (and which caused the abandonment) was not ow-
ing to any of the perils insured against, but to the rotten-
ness of the ship. The terms of the rotten clause do not
render it necessary that the survey should be made before
the termination of the voyage, or before the ship arrives at
her port of destination. Nor is it exclusively intended to
guard the underwriters against the contingency *of her being
unable to prosecute her voyage on account of her being un-
sound or rotten ;* but *also against all claims of the assured*

UTICA,
Aug, 1824.

Griswold
v.
N tional
Insurance
Company.

*for any loss or injury which can be traced to the unsoundness, or rottenness of the ship.* A regular survey, whereby the ship is declared unseaworthy by reason of her being unsound or rotten, is, by the agreement of the parties, made conclusive evidence of the fact ; and if the survey is made with reference to the voyage and perils to which the policy relates, within a reasonable time after the termination of the voyage, it is sufficient.

In many cases no survey could be made except at the port of destination ; and in most cases it would be impossible to make it before the termination of the voyage, (that is, within 24 hours after the ship has come to her moorings, and cast her anchor ;) because it cannot be satisfactorily and thoroughly made until the vessel is unladen. But the plea in this case alleges the survey to have been *made upon and immediately after her arrival,* which, if it were necessary, would be intended to be before the termination of the voyage.

2. It was not necessary to set forth in the plea the manner and circumstances of the survey. It was not done in the case of *Brandegee* v. *The National Insurance Company*, (20 *John.* 328.) The pleas there are, in this respect, precisely like those in this case. They simply state, *that a regular survey was had,* and no objection was made to them on that ground. The survey is the act of the assured, in order to charge the underwriters. The latter are not parties to it. In *Haff* v. *The Marine Insurance Company*, (4 *John. Rep.* 135) *Thompson, J.* says, " It (the survey) is to be presumed *prima facie,* to be in the possession of the plaintiff, (the assured.) It is always made at the instance, and for the benefit of the owner or master of the vessel, and it goes of course into his hands."

Whether they would be permitted to impeach the regularity of their own survey, may well be questioned. But it certainly is not incumbent upon the defendants to set forth in their plea all the facts and circumstances which show it to be regular. Not being parties to the survey, they may not know those facts and circumstances. They must be known.

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

to the plaintiffs, and if they afford any ground for impeaching the regularity of the survey, the statement would come more properly from them, (provided it is competent for them to impeach it.) It falls within the general rule of pleading, that matter which should come more properly from the other side need not be stated. (1 *Chit. Pl.* 228, *and cases there cited ; and vid. the opinion of Johnson, J. in Dorr* v. *The Pacific Insurance Company,* 7 *Wheat.* 612.)

3. The *survey,* as set out in the second plea to the first and second counts of the declaration, is undoubtedly a good bar to the action. After stating the arrival of the vessel at *Cadiz,* and that a regular survey was had upon her, it states the survey itself, and its result, in the following terms : " *Upon which survey the said ship was thereby declared unseaworthy, by reason of her being rotten.*" The test is, does it appear from the survey that rottenness was the sole cause of condemnation ? If it does, the survey is a good bar. But if the condemnation is in part for decay, and in part for damage occasioned by the perils of the sea, then it is no defence for the underwriters. (*Steinmets* v. *The United States Insurance Company,* 2 *Sergt. & Rawle,* 293. *Garrigues* v. *Coxe,* 1 *Bin.* 598. *Armroyd* v. *The Union Insurance Company,* 2 *id.* 394. *Brandegee* v. *The National Insurance Company,* 20 *John.* 328. *Dorr* v. *The Pacifick Insurance Company,* 7 *Wheat.* 581. *Haff* v. *Marine Insurance Company,* 8 *John.* 167.) In all these cases, the survey stated, with more or less particularity, the circumstances of the ship's condition ; and the principal inquiry in each of them was, whether all the particulars stated, made out the fact of rottenness to be the sole ground of condemnation.

It seems to be taken for granted, in all the cases, that if the survey states the condemnation to be for rottenness alone, without stating the particulars which are affected, it is conclusive. *Tilghman,* Ch. J. in *Garrigues* v. *Coxe,* 1 *Bin.* 595, says, " If the survey should say *she was unsound, and no more,* the plaintiff would be barred." It is true that the same learned Judge, in *Steinmets* v. *The U. S. Insurance Company,* (2 *Sergt. & Rawle,* 297) remarks, " that, upon a survey, the particular parts which are found in a decayed

UTICA,
Aug. 1824.

Griswold
v.
National
Insurance
Company.

state, are always mentioned ; *and, indeed, it would not be proper to say, in general, that the vessel was rotten.*" He was reasoning against the position which had been urged by the plaintiff's counsel, that the survey ought to be in the very words of the policy. He thought, instead of confining themselves to the expressions used in the policy, *it was proper* for the surveyors to state the particulars of the decay. It is undoubtedly proper, but not *indispensable.*

The *third plea*, which is to the first count alone, states, that a survey was had upon the vessel. &c. *by which she was found to be in a very bad and rotten condition.* This plea is bad. Rottenness does not appear to be the sole cause of condemnation. A vessel may be in a very *bad* condition, without being rotten. She may be rotten in some of her timbers, without being unseaworthy. The cause of her condemnation, then, upon this survey, is left doubtful ; and that is a fatal objection to it in a plea in bar.

The *fourth plea*, which is to the second count, is the same as the third, and is bad for the same reasons.

The *fifth plea* is to the third count, and is the same as the two last, (except that part which relates to the general average) and is bad for the same reasons.

These pleas being bad in substance, are not cured by the replication ; *for a bar which wants substance cannot be aided by a replication.* (*Com. Dig. Pleader*, (*E*, 37). 8 *Coke*, 120, b. *Com. Dig. Pleader,* (*M.* 1, 2). 2 *Salk.* 519. 15 *John.* 191, *per Thompson, Ch. J.*) It is unnecessary, therefore, to consider whether the demurrers to the replications to these pleas are well taken or not ; for the pleas being bad, the plaintiff must have judgment.

It remains, then, only to consider the causes of demurrer to the replication to the 2d plea. The first cause of demurrer assigned is, that the traverse seeks to put in issue matters not in the plea. The plea states a survey made at *Cadiz.* The replication traverses a survey at *Cadiz or elsewhere.* The issue must be as broad as the traverse ; but a rejoinder as broad as the replication would have been a departure from the plea, and have subjected the defendant to a demurrer. That cause is well taken. It is also a depar-

UTICA,
Aug. 1824.

ture from the declaration.  It alleges the survey to have been at *Cadiz*, after the arrival, whereas the declaration avers a physical total loss.

The defendants are, therefore, entitled to judgment upon their demurrers to the replication to the second plea ; with leave to the plaintiffs to amend, on payment of costs : and the plaintiff must have judgment upon the replications to the other pleas.

Judgment accordingly.