SAGINAW VALLEY & ST. L. R. CO. (MACDONALD v.). See Case No. 8,766.

---

## Case No. 12,217.

### SAGORY v. WISSMAN.

[2 Ben. 240; 1 Am. Law T. Rep. U. S. Cts. 41.][2]

District Court, S. D. New York. March, 1868.

FOREIGN CONSUL—JURISDICTION OF STATE COURT—BILL AND CROSS-BILL—STRICT FORECLOSURE—EFFECT OF REPLYING TO A BAD PLEA.

1. Where a suit at common law was brought against the defendant, a foreign consul, the declaration being in debt, on a bond for $40,000 executed by the defendant to the plaintiff, September 30th, 1851; and the defendant's plea set up that the bond was secured by a mortgage on lands in Virginia, conditioned that, if the bond were not paid, the plaintiff might enter into the lands and sell them, and retain his debt out of the proceeds, and that, on the 6th of April, 1858, after the debt became due, the plaintiff did enter on the lands, they exceeding in value the amount of the debt, to sell and dispose of them, and that he might have sold and disposed of them, and paid his debt, but, instead

---

of so doing, he had remained in possession, whereby the debt was paid and satisfied; and the plaintiff replied to the plea, setting up that the defendant, on the 4th of July, 1855, filed a bill in chancery in a state court in Virginia against the Buckingham Gold Company, alleging that he, as owner of the lands subject to the mortgage, had contracted to sell the lands to them, and they had taken possession, but had not paid the price, and praying a sale of the lands by decree of the court, and afterward filed a supplemental bill against the plaintiff, praying that he might be made a party, and that afterward, in June, 1857, after default in the payment of the mortgage, the plaintiff filed a bill, in the nature of a cross-bill in chancery, in the same court, against the defendant and others, for the purpose of selling the premises to pay the debt, and the defendant appeared and answered the bill, and afterward the bills came on to be heard together, and the court made a decree of sale, under which the lands were sold to the plaintiff, leaving a deficiency of $18,399, and that the plaintiff's entry into the land was under that sale, and not otherwise; and the defendant rejoined, (1) that the court in Virginia had no jurisdiction of the cause, inasmuch as the defendant was a foreign consul; and (2) that the plaintiff's bill in that court was not a cross-bill; and the plaintiff demurred to the rejoinder: *Held*, that the courts of a state have no jurisdiction of suits against foreign consuls, but have jurisdiction of suits brought by them.

2. The court of Virginia had jurisdiction of the suit brought by the defendant; but the suit brought there by the plaintiff was not a part of the defendant's suit, but was an original suit, and, therefore, not within the jurisdiction of that court.

3. The first rejoinder was, therefore, good.

4. The second rejoinder was bad, it averring that the bill of the plaintiff was not a cross-bill, whereas the replication averred that the bill was in the nature of a cross-bill.

5. A strict foreclosure of a mortgage is a payment of the debt, but the entry alleged in the defendant's plea was not a strict foreclosure, but an entry to sell and pay the plaintiff's debt; and such an entry was no defence to the bond.

6. The defendant's plea was, therefore, bad; and although the plaintiff had replied to it, the defect was not cured thereby, and the plaintiff was, therefore, entitled to judgment.

This case came up on a demurrer by the plaintiff [Charles Sagory] to each one of two several rejoinders by the defendant [J. Fritz Wissman, administrator of Frederick Wissman] to a replication by the plaintiff to a plea by the defendant to the first count of the plaintiff's declaration. The suit was brought against Frederick Wissman in his lifetime, and the pleadings were framed prior to his death. The declaration was in debt, for $40,000. The first count set forth, that the defendant was the consul of the free city of Frankfort-on-the-Main, for New York, and it was founded on a bond executed by the defendant to the plaintiff, September 30th, 1851, for $40,000. The plea set forth, that the bond sued on was secured by a mortgage of even date, executed by the defendant to the plaintiff, upon certain lands in Buckingham county, in the state of Virginia, conditioned that, if the debt were not paid when due, the plaintiff might enter into and take possession of the lands, and sell them, and

retain his debt out of the avails, with costs and expenses, paying the overplus, if any, to the defendant; that, on the 6th of April, 1858, after the debt became due, the plaintiff entered into and took possession, in his own right, of the lands, they exceeding in value the amount of the debt, to sell and dispose of the same, and which he might have sold and disposed of, and, out of the avails, have paid the debt and the costs and expenses, but that, instead of doing so, he had ever since remained, and still remained, in possession thereof, and claimed to be the absolute owner thereof, and as such had ever since received, and still did receive, the rents and profits thereof, whereby the debt was paid and satisfied. The plea concluded with a verification. The replication, after craving oyer of the mortgage mentioned in the plea, set forth, that the defendant, on the 4th of July, 1855, filed a bill in chancery, in the circuit court of the county of Buckingham, in the state of Virginia, sitting as a court of chancery, a court of general jurisdiction, against the Buckingham Gold Company, a corporation, alleging that the defendant, as owner of the lands subject to the mortgage, had contracted with said company for the sale of the lands to them, and that the company had gone into possession of the lands, but had made default in paying for them, and praying that the lands might be sold under the decree of said court; that afterward, and on the 18th of September, 1856, the defendant filed in the same court a supplemental bill against the plaintiff, setting forth the said mortgage, and that the whole of its principal and a large amount of interest on it were due, and praying that the plaintiff might be made a party to said suit; that the plaintiff filed his answer to said original and supplemental bills, and afterward and on the 3d of June, 1857, after default in the payment of the mortgage, filed a bill in chancery in the nature of a cross-bill, in said court, against the defendant and others, for the purpose of selling the mortgaged premises, unless the defendant should redeem them, and of applying the proceeds toward the debt due to him by the defendant; that the defendant appeared and answered the bill, and admitted its allegations; that, on the 16th of September, 1857, the original and supplemental bills of the defendant, and the cross-bill of the plaintiff, came on to be heard together by the court, and it was decreed, that, unless the defendant should pay to the plaintiff, within sixty days from that date, $24,800, with interest at the rate of six per cent. per annum on $20,000, part thereof, from September 30th, 1856, till paid, the defendant should be foreclosed from redeeming, and the premises should be sold at auction, and the plaintiff might become the purchaser; that, on the 24th of December, 1857, the premises were duly sold at auction, under the mortgage and the decree, for $9,100, to the plaintiff, leaving a deficiency

due to the plaintiff, on the mortgage, of $18,-399.75, with interest from December 24th, 1857; that the premises were duly conveyed to the plaintiff under the decree; and that the plaintiff entered into possession of the premises by virtue of said sale, and not otherwise. The replication concluded with a verification.

The first rejoinder set forth, that, before, and at the time of, the commencement of the suits by and against the defendant, mentioned in the replication, and before and at the time of the commencement of the suit against him in which the decree was rendered, and at the time the decree was rendered, the court in Virginia was a state court, and the defendant was consul, in New York, of the free city of Frankfort-on-the-Main, duly accredited, and the state court had no jurisdiction of the cause, but such jurisdiction belonged exclusively to courts established under the constitution and laws of the United States. This first rejoinder concluded with a verification. To this first rejoinder the plaintiff demurred, setting forth, in his demurrer, various causes of demurrer. Only one of them was presented for consideration on the argument, namely, whether, as the defendant was a foreign consul, the state court of Virginia had jurisdiction of the suits mentioned in the rejoinder. The ground taken by the plaintiff was, that, as the defendant brought a suit in the state court, and made the plaintiff a party to it, as the holder of the mortgage on the premises in question, and as the plaintiff then filed a bill in the same court, in the nature of a cross-bill, against the defendant and others, for the purpose of selling the premises, and of applying the proceeds towards the satisfaction of the debt, and as the suits brought by both parties were heard together, and the decree that was made was made in both of the suits, the state court had jurisdiction to make the decree; that the privilege of a consul to be exempt from the exercise of jurisdiction over him by a state court, extended only to an adverse suit against him, and did not extend to a suit instituted by himself; that the suit brought by the plaintiff was not an original suit; and that the jurisdiction acquired by the state court over the parties, by the institution of the suit brought by the defendant, covered the cross litigation instituted by the plaintiff, although, if the bill filed by the plaintiff had been an original bill, the court would have had no jurisdiction of it, as against the defendant.

W. M. Evarts, for plaintiff.
S. P. Nash, for defendant.

BLATCHFORD, District Judge. It is unquestionable that, under section 9 of the judiciary act of September 24th, 1789 (1 Stat. 76), the courts of the states have no jurisdiction of a suit against a foreign consul. Davis v. Packard, 7 Pet. [32 U. S.] 276. There is no objection, however, to the bringing of a suit by a consul in a state court. Although, by the constitution (article 3, § 2), the judicial power of the United States extends to all cases affecting consuls, yet congress has not seen proper to make the jurisdiction of suits brought by consuls exclusive in the courts of the United States. The state court of Virginia had, therefore, undoubted jurisdiction of the suit brought by the defendant. But it had no jurisdiction of the suit brought by the plaintiff, if that suit was an original suit. The plaintiff claims that that suit was not an original suit, but was a cross-suit, and was a part of the suit brought by the defendant, and that, therefore, the court had jurisdiction to make the decree in it.

I think that it appears, by the replication, that the suit brought by the plaintiff, in the state court, was an original suit. The replication does not state that the bill filed by the plaintiff was a cross-bill, but states that it was a bill in the nature of a cross-bill. The replication does not show why the plaintiff was made a party to the suit brought by the defendant, or what relief, if any, was prayed, in that suit, against the plaintiff. It merely states, that a supplemental bill was filed by the defendant, setting forth the execution and delivery of the mortgage, and that the whole of the principal and a large amount of interest was due thereon, and praying that the plaintiff might be made a party to the suit. It is apparent, that, on a bill of this character, no decree could have been made against the defendant, foreclosing his equity of redemption in the mortgaged premises. The bill filed by the plaintiff is stated, in the replication, to have been filed for the purpose of selling the mortgaged premises, in case they were not redeemed by the defendant, and of applying the proceeds toward the debt due to the plaintiff. The prayer of the original bill filed by the defendant is stated, in the replication, to have been merely that the premises should be sold. That the bill filed by the plaintiff was a bill to foreclose the equity of redemption of the defendant in the mortgaged premises, is shown by the averment, in the replication, that the decree made by the court was, that, unless the defendant should, by a certain day, pay to the plaintiff a sum certain, the defendant should be barred from all equity of redemption in the mortgaged premises, and they should be sold at auction. It is quite clear, I think, that the bill filed by the plaintiff was not a cross-bill, but was an original bill for relief. Story, Eq. Pl. § 400, note 4. Therefore, if the defendant was, at the time, a foreign consul, the court had no jurisdiction of the suit, and no jurisdiction to make the decree in question, so far as that decree barred the defendant's equity of redemption. As the replication states the decree, it barred such equity, unless the defendant should pay to the plaintiff a certain sum by a certain day, and, when such equity should be barred, then the premises should be sold.

It is under a deed made to the plaintiff on a purchase made by him of the premises, on a sale made of them under those circumstances, that, as the replication avers, he entered into the premises.

The demurrer to the first rejoinder is, therefore, overruled.

The second rejoinder is one which sets forth that the bill filed by the plaintiff in the state court was not a cross-bill. This rejoinder concludes to the country. To this second rejoinder the plaintiff demurs, and assigns, as one cause of demurrer, that the rejoinder ought not to have concluded to the country, and does not put in issue any matter of fact alleged in the replication. This is true. The replication avers that the bill filed by the plaintiff was in the nature of a cross-bill. The rejoinder avers that it was not a cross-bill.

The demurrer to the second rejoinder is, therefore, allowed.

The plaintiff insists, however, that, although both of the rejoinders may be good, the plea in question is bad; and that, as the defendant committed the first fault, by pleading the plea out of which the rejoinders grew, judgment must be rendered against the defendant on both of the demurrers. I think it very clear that the plea is bad. It avers that the mortgage contained a condition that, if the debt were not paid, the plaintiff might enter into the lands and sell them, and pay his debt out of the proceeds; that, after the debt became due, he entered into and took possession, in his own right, of the lands, they exceeding in value the amount of the debt, to sell and dispose of the same, but that, instead of doing so, he had continued in possession, claiming to be the absolute owner, and receiving the rents; and that thereby the debt is paid. A foreclosure of a mortgage on land, without a sale of the land, that is, what is called a strict foreclosure, is an extinguishment of the debt, provided the premises are of sufficient value to pay the debt. But this doctrine only applies to a case of strict foreclosure. It does not apply to a case where the mortgagee, instead of entering into possession of the premises by way of strict foreclosure, either on a decree of strict foreclosure, or by virtue of a power in the mortgage to that effect, enters for the purpose of sale. On a strict foreclosure, the mortgagee must credit the value of the premises on the debt, if they are of no greater value than the amount of the debt, but, if they are of greater value than the amount of the debt, the mortgagee is under no obligation to refund the overplus to the mortgagor. On a sale under a decree of foreclosure and sale, the debt is extinguished only up to the amount produced by the sale, and the balance may be recovered on the bond, the surplus, if any there be, on the sale, belonging to the mortgagor. These principles are fully settled in Spencer v. Harford, 4 Wend. 381, and Morgan v. Plumb, 9 Wend. 287. Although the plea in this case avers that the value of the premises was

greater than the amount of the debt, yet it does not show that the mortgagee took possession of the premises by way of strict foreclosure, either under a decree or under the mortgage. It sets up no decree of any kind, but merely an entry by the plaintiff under the mortgage. It avers, that the power in the mortgage was, that the plaintiff might, on default in the payment of the debt, enter into and take possession of the lands, and sell them, and retain the debt out of the avails, paying the overplus, if any, to the defendant; and that, after the debt became due, the plaintiff entered into and took possession, in his own right, of the lands, to sell them, and that he might have sold them, and have paid the debt from the proceeds, because the lands exceeded in value the amount of the debt, but that, instead of selling them, he has remained in possession, claiming to be the owner of them, and receiving the rents and profits. The plea sets up nothing which shows that the defendant's equity of redemption in the lands is in any way barred, or foreclosed, or affected. He could, for aught that is shown by the plea, file a bill to redeem the mortgage. If the plaintiff should, in defence, set up the facts which are averred in this plea, those facts would be no defence to the bill. They are, therefore, no defence to this suit. The plaintiff has a right, notwithstanding the facts set up in the plea, and although he may have entered into and retained possession of the lands, under the circumstances and for the purpose set forth in the plea, to pursue any concurrent remedy which he has, to recover the debt from the defendant, subject, of course, to the right of the defendant to redeem the mortgage, and to compel the plaintiff to sell the lands and apply the proceeds on the debt. The defendant has no right to complain. He could have paid his debt. He gave to the plaintiff the right to enter for security, subject to the obligation to sell. He can enforce that obligation. But he cannot claim, as he does in this plea, that such entry paid the debt, because the lands were of more value than the debt. The plea is, therefore, bad in substance, and, it being so, the plaintiff did not cure the defect by replying to the plea, and there must be judgment for the plaintiff. Wyman v. Mitchell. 1 Cow. 316, 322; Griswold v. National Ins. Co., 3 Cow. 96, 119.